**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARKEITH PARKS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AINSWORTH PET NUTRITION, LLC d/b/a RACHAEL RAY NUTRISH,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, MARKEITH PARKS ("Plaintiff" or "Parks"), a resident of Bronx County, New York, individually and on behalf of other similarly situated individuals, by and through his counsel, hereby files this Class Action Complaint for equitable relief and damages against Defendant, AINSWORTH PET NUTRITION, LLC, and its wholly owned subsidiary, RACHAEL RAY NUTRISH® (collectively, "Rachael Ray Nutrish" or "Defendant"), regarding the deceptive labeling, marketing, and sale of Defendant's line of Super Premium Food for Dogs ("the Products"),[1] and alleges the following based upon information, belief, and the investigation of his counsel:

**INTRODUCTION**

1.     Aware of the health risks and environmental damage caused by chemical-laden foods, especially packaged foods, consumers increasingly demand foods for themselves and for their pets that are natural and whole and that omit chemicals.

2.     Rachael Ray Nutrish knows that consumers seek out and wish to purchase whole, natural foods for their pets that do not contain chemicals, and that consumers will pay more for foods for their pets that they believe to be natural than they will pay for foods that they do not believe to be natural.

---

[1] Discovery may demonstrate that additional Rachael Ray Nutrish® products are within the scope of this Complaint.

1

3.      To capture this growing market, Rachael Ray Nutrish aggressively advertises and promotes the Products as "Natural." *See*, **Figure 1**, below.



4.      These claims are false, deceptive, and misleading. The Products at issue are not "Natural." Instead, the Products contain the unnatural chemical glyphosate, a potent biocide and endocrine disruptor, with detrimental health effects that are still becoming known.

5.      No reasonable consumer, seeing these "Natural" representations, would expect that the Products contain unnatural chemicals.

6.      Tests conducted by an independent laboratory revealed that glyphosate is present in the Products.

7.      Rachael Ray Nutrish's advertising falsely claims that the Products are "Natural" and contains no disclaimer regarding the presence of the unnatural chemical glyphosate in the Products.

8.      The exact source of glyphosate in the Products is known only to Rachael Ray Nutrish and its suppliers.[2] However, crops such as peas, soy, corn, beets and alfalfa are sprayed with the chemical in order to dry them and produce an earlier, more uniform harvest—a practice with no health benefits, meant only to increase yield.

9.      By deceiving consumers about the nature, quality, and/or ingredients of the Products, Rachael Ray Nutrish is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take away market share from competing products, thereby increasing its own sales and profits.

10.     Consumers lack the scientific knowledge necessary to determine whether the Products are in fact "Natural" and to know or to ascertain the true ingredients and quality of the Products.

11.     Reasonable consumers must and do rely on Rachael Ray Nutrish to report honestly what the Products contain, and whether the Products are in fact "Natural."

12.     Rachael Ray Nutrish intended for consumers to rely on its representations, and reasonable consumers did in fact so rely. As a result of its false and misleading labeling and omissions of

_____

[2] Further discovery will reveal the precise source of the glyphosate.

3

fact, Rachael Ray Nutrish was and is able to sell the Products to consumers in the State of New York and throughout the United States and to realize sizeable profits.

13.     Plaintiff and members of the classes described below relied on Defendant's misrepresentations that the Products are "Natural" when purchasing the Products. Plaintiff and members of the classes described below paid a premium for Defendant's Products based upon the "Natural" representations. Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "Natural," Plaintiff and Class Members suffered an injury in the amount of the premium paid. Contrary to representations on the Products' labeling, instead of receiving a "Natural" product, consumers received Products containing glyphosate.

14.     Rachael Ray Nutrish's false and misleading representations and omissions violate New York's General Business Law §§ 349 and 350 and common law.

15.     Because Rachael Ray Nutrish's labeling and advertising of the Products tends to mislead and is materially deceptive about the true nature, quality, and ingredients of the Products, Plaintiff brings this deceptive advertising case on behalf of a class of consumers who purchased the Products in New York and throughout the United States, and seeks relief including actual damages, interest, costs, reasonable attorneys' fees, an injunction to halt Rachael Ray Nutrish's false marketing and sale of the Products, and a court-ordered corrective advertising campaign to inform the public of the true nature of the Products.

## JURISDICTION AND VENUE

16.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff Parks is a citizen of New York, and on information and belief, Defendant,

4

Rachael Ray Nutrish, is a citizen of Pennsylvania. On information and belief, the amount in controversy exceeds $5,000,000.00.

17.     This Court has personal jurisdiction over the parties in this case. Plaintiff Parks is a citizen of New York and resident of Bronx County, New York. Rachael Ray Nutrish purposefully avails itself of the laws of New York to market its Products to consumers nationwide, including consumers in New York, and distributes its Products to numerous retailers throughout the United States, including New York.

18.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of Rachael Ray Nutrish's Products, occurred within this District.

## PARTIES

19.     At all times mentioned herein, Rachael Ray Nutrish was and is a Pennsylvania corporation that maintains its principal place of business and headquarters in Meadville, Pennsylvania. Rachael Ray Nutrish was, at all relevant times, engaged in commercial transactions throughout the United States and the State of New York.

20.     Rachael Ray Nutrish manufactures and/or causes the manufacture of the Products, and markets and distributes the Products in retail stores in New York and throughout the United States.

21.     At all times mentioned herein, Plaintiff Parks was and is an individual consumer over the age of 18, a citizen of the State of New York, and a resident of the County of Bronx. During the class period, Parks purchased Rachael Ray Nutrish's Products on multiple occasions at a BJ's Wholesale Club on Exterior Street in Bronx, New York.

22.     In deciding to make his purchase, Parks saw, relied upon, and reasonably believed Rachael Ray Nutrish's representations that its Products were "Natural."

23.    Parks was willing to pay more for Rachael Ray Nutrish's Products because he expected the Products to be free of pesticides and other unnatural chemicals.

24.    Had Parks known at the time that Rachael Ray Nutrish's Products contained the unnatural biocide glyphosate, he would not have purchased or continued to purchase Rachael Ray Nutrish's Products.

25.    If Rachael Ray Nutrish's Products were reformulated such that Rachael Ray Nutrish's representations were truthful, i.e., such that its Products were "Natural" and contained no glyphosate, Parks would consider purchasing Rachael Ray Nutrish's Products in the future.

## FACTUAL ALLEGATIONS

26.    American consumers increasingly and consciously seek out natural and healthful food products for themselves and their pets. Once a small niche market, healthful, natural foods are now sold by conventional retailers, and their sales continue to soar.

27.    Consumers value natural foods for themselves and their pets for myriad health, environmental, and political reasons, including avoiding chemicals and additives, attaining health and wellness, helping the environment, and financially supporting companies that share these values.

**A.    Rachael Ray Nutrish Cultivates a "Natural" Brand Image for Supreme Premium Food for Dogs**

28.    Rachael Ray Nutrish knows that consumers seek out and wish to purchase whole, natural foods for their pets that do not contain artificial chemicals, and that consumers will pay more for pet foods that they believe to be natural than they will pay for pet foods that they do not believe to be natural.

29.    A recent nationally representative Consumer Reports survey of 1,005 adults found that more than half of consumers usually seek out products with a "natural" food label, often in the false belief

6

that they're produced without genetically modified organisms, hormones, pesticides, or artificial ingredients.[3]

30.     To capture this market, Rachael Ray Nutrish markets its Supreme Premium Food for Dogs as "Natural."

31.     Rachael Ray Nutrish does not disclose the presence in the Product of glyphosate.

**B.      Rachael Ray Nutrish Presents the Products as "Natural"**

32.     Rachael Ray Nutrish prominently labels the Products as "Natural."

33.     Upon information and belief, Rachael Ray Nutrish has profited enormously from its falsely marketed products and its carefully orchestrated label and image.

34.     Representing that a product is "Natural" is a false statement of fact.

35.     Failing to disclose that a product contains glyphosate is an omission of material fact.

36.     Consumers reasonably believe that a product or ingredient represented as "Natural" does not contain synthetic chemicals.

37.     Consumers reasonably believe that a product or ingredient represented as "Natural" does not contain unnatural biocides.

38.     In 2014, the Consumer Reports National Research Center conducted a nationally representative phone survey to assess consumer opinion regarding food labeling.[4]

39.     Sixty-six percent of all respondents in the Consumer Reports survey said that a "natural" label on packaged and processed foods means that "no toxic pesticides were used."[5]

---

[3] *See Natural Food Labels Survey 2015 Nationally-Representative Phone Survey,* Consumer Reports National Research Center, (2015), https://www.consumerreports.org/content/dam/cro/magazine-articles/2016/March/Consumer_Reports_Natural_Food_Labels_Survey_2015.pdf

[4] *See Organic Food Labels Survey 2014 Nationally-Representative Phone Survey,* Consumer Reports National Research Center, (2014), http://greenerchoices.org/wp-content/uploads/2016/08/CR2014OrganicFoodLabelsSurvey.pdf

[5] *Id.* at 2.

40.     Rachael Ray Nutrish knows and intends that when consumers see the product labels or advertisements promising the products are "Natural," consumers will understand that to mean that, at the very least, that the products do not contain synthetic or potentially harmful chemicals.

## C.     Glyphosate Is Not Natural

41.     Rachael Ray Nutrish's representations that the Products are "Natural" are false. In fact, quantitative testing revealed that the Products contain glyphosate.

42.     The Products thus are not "Natural" and labeling or advertising the Products as such is misleading and deceptive.

43.     On information and belief, glyphosate is, by volume, the world's most widely produced herbicide.

44.     Glyphosate was invented by the agrochemical and agricultural biotechnology corporation Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup, after DDT was banned.[6]

45.     By the late 1990s, use of Roundup had surged as a result of Monsanto's strategy of genetically engineering seeds to grow food crops that could tolerate high doses of the herbicide. The introduction of these genetically engineered seeds enabled farmers more easily to control weeds on their crops.[7]

46.     Between 1996 and 2011, herbicide use in the United States *increased* by 527 million pounds, despite Monsanto's claims that genetically modified crops would *reduce* pesticide and herbicide use.[8]

---

[6]  Baden-Mayer, Alexis, *Monsanto's Roundup. Enough to Make You Sick.* (Jan. 21, 2015), https://www.organicconsumers.org/news/monsantos-roundup-enough-make-you-sick

[7] *See id.*

[8] *See id.*

8

47.     Recent developments concerning the possible health and environmental effects of glyphosate have made consumers especially wary of the presence of this controversial chemical in their food products.

48.     For instance, in 2015, the International Agency for Research on Cancer (IARC), a research arm of the World Health Organization, declared glyphosate a category 2A "probable" human carcinogen.

49.     A summary of the study underlying this declaration was published in *The Lancet Oncology*, Vol. 16, No. 5 (May 2015).[9]

51.     Glyphosate has been shown to cause liver disease in rats at levels far lower than is allowed by the EPA.[10]

52.     The author of the study, Michael Antoniou, Ph.D., has stated:

> "The findings of our study are very worrying as they demonstrate for the first time a causative link between an environmentally relevant level of Roundup consumption over the long-term and a serious disease . . . [o]ur results also suggest that regulators should reconsider the safety evaluation of glyphosate-based herbicides."[11]

53.     In this respect, it is important to note that independent laboratory results have revealed the amount of glyphosate in the Products exceeds the ultra-low level indicated in Dr. Antoniou's study. *See*, **Exhibits A and B**, annexed hereto.

54.     Further studies note that "glyphosate may be a causal agent related to the rise of pet

---

[9] "Carcinogenicity of the Organophosphate Pesticides Tetrachlorvinphos, Parathion, Malathion, Diazinon, and Glyphosate," *The Lancet Oncology,* Vol. 16, No. 5, (May 2015), https://www.thelancet.com/journals/lanonc/article/PIIS1470-2045(15)70134-8/abstract

[10] *See id.*

[11] *See id.*

cancers . . ."[12]

55.     In addition, on January 27, 2017, Fresno County Superior Court Judge Kristi Kapetan ruled that the State of California can require Monsanto to label its glyphosate herbicide, Roundup, as a probable carcinogen.[13]

56.     No reasonable consumer would expect this controversial and potentially harmful synthetic chemical to be present in "Natural" dog food.

**D.      Rachael Ray Nutrish's Labels Are Misleading and Omit Material Facts**

57.     Rachael Ray Nutrish's conduct in labeling or representing the Products as "Natural" deceived and/or was likely to deceive the public.

58.     Consumers were deceived into believing that the Products are natural and that nothing in the dog food was not natural.

59.     Instead, the Products contain glyphosate, an *un*natural biocide and possible carcinogen, with myriad other potential health effects about which health-conscious consumers have become increasingly concerned.

60.     Consumers cannot discover the true nature of the Products from reading the label. Consumers could not discover the true nature of the Products even by visiting Rachael Ray Nutrish's website, which makes no mention of glyphosate.

61.     Discovery of the true nature of the content of the Products requires knowledge of chemistry and access to laboratory testing that is not available to the average reasonable consumer.

---

[12] "Glyphosate, Pathway to Modern Diseases IV: Cancer and Related Pathologies", *Journal of Biological Physics and Chemistry*, Article Number 11SA15R (2015).

[13] Rodriguez, Robert, "Monsanto Loses in Fresno County Judge's Final Ruling on Roundup Chemical," *The Fresno Bee*, (Mar. 13, 2017), https://www.fresnobee.com/news/business/agriculture/article138261598.html

62.     Rachael Ray Nutrish deceptively and misleadingly conceals material facts about the Products, namely, that the Products are not "Natural" because in fact the Products contain glyphosate; and the Products are not what a reasonable consumer would consider "Natural" because they in fact contain glyphosate.

63.     The production process Rachael Ray Nutrish uses for the Products is known only to Rachael Ray Nutrish and its suppliers.

64.     Rachael Ray Nutrish has not disclosed such information to Plaintiff.

65.     Testing reveals the presence of glyphosate in the Products, but only Rachael Ray Nutrish knows the methods by which its dog food is processed, or what would account for the presence of glyphosate in its Products.

66.     Rachael Ray Nutrish's concealment tolls the applicable statute of limitations.

67.     To this day, Rachael Ray Nutrish continues to conceal and suppress the true nature, identity, source, and method of production of its Products.

**E.      Rachael Ray Nutrish Knew That Its Representations Were False**

68.     Rachael Ray Nutrish holds itself out to the public as a trusted expert in the sourcing and processing of dog food.

69.     Rachael Ray Nutrish knew what representations it made on the labels of the Products. It also knew how the dog food was sourced and processed, and that it contains glyphosate, an unnatural biocide.

70.     Rachael Ray Nutrish thus knew, or should have known, the facts demonstrating that the Products were mislabeled and falsely advertised.

71.     Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing food.

72.     Rachael Ray Nutrish made the false, misleading, and deceptive representations and omissions intending for consumers to rely upon these representations and omissions in purchasing the Products.

73.     In making the false, misleading, and deceptive representations and omissions at issue, Rachael Ray Nutrish knew and intended that consumers would purchase the Products when consumers would otherwise purchase a competing product.

74.     Consumers are not only willing to pay more for a product with ingredients that purport to be "Natural" – they also expect that product to be pesticide- and herbicide-free.

75.     In making the false, misleading, and deceptive representations and omissions at issue, Rachael Ray Nutrish also knew and intended that consumers would pay more for "Natural" products that are free of unnatural agents than they would pay for products that are not "Natural," furthering Rachael Ray Nutrish's private interest of increasing sales of its products and decreasing the sales of the natural and/or glyphosate-free products that are truthfully marketed by its competitors.

76.     Rachael Ray Nutrish knows that consumers prefer "natural" ingredients and foods that do not contain unnatural or potentially dangerous chemicals. Rachael Ray Nutrish knows that consumers will pay more for "natural" foods or would not purchase the foods at all unless they were "natural" and free from unnatural and potentially dangerous chemicals.

77.     Similarly, independent surveys confirm that consumers will purchase more "natural" products than conventional products, and will pay more for "natural" products.

78.     Upon information and belief, Rachael Ray Nutrish has failed to remedy the problem with the Products, thus causing future harm to consumers.

79.     Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold as is, and without adequate disclosure of the presence of glyphosate.

80.     Rachael Ray Nutrish has failed to provide adequate relief to members of the proposed classes as of the date of the filing of this Complaint.

81.     Plaintiff contends that the Products were sold pursuant to unfair and unconscionable trade practices because the sale of Rachael Ray Nutrish's Product offends public policy and is immoral, unethical, oppressive, unscrupulous, and caused substantial economic injuries to consumers.

82.     Reasonable consumers do not expect the Products, represented and advertised as "Natural," to contain unnatural chemicals or ingredients such as glyphosate. Defendant's statements and other representations convey a series of express and implied claims and/or omissions which Defendant knows are material to the reasonable consumer in making a purchasing decision, and which Defendant intended for consumers to rely upon when choosing to purchase the Products.

83.     Defendant misrepresented the nature, quality, and/or ingredients of the Products and/or failed to provide a disclaimer disclosing the presence of glyphosate contained in the Products, which was and is false, misleading, and/or likely to deceive reasonable consumers.

84.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Natural" label.

## CLASS ALLEGATIONS

85.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

86.     This action is maintainable as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

87.     The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the claims and certain issues in this action on behalf of a Class of individuals defined as:

> All persons who purchased Rachael Ray Nutrish's Products (as defined herein) within the United States from the beginning of any applicable limitations period through the date of class certification (the "National Class Period").

88.     Additionally, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other similarly situated New York residents (the "New York Sub-Class"), defined as follows:

> All persons who purchased Rachael Ray Nutrish's Products (as defined herein) within the State of New York from the beginning of any applicable limitations period through the date of class certification (the "New York Class Period").

89.     Excluded from the Class and the New York Sub-Class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

90.     Plaintiff brings the Class and the New York Sub-Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

91.     Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

92.     All members of the Class and New York Sub-Class were and are similarly affected by the deceptive advertising of Rachael Ray Nutrish's Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class and New York Sub-Class.

A.      **Numerosity**

93.     At this time, Plaintiff does not know the exact number of the Class and New York Sub-Class members. Based on the annual sales and popularity of Rachael Ray Nutrish's Product, it is readily apparent that the number of consumers in the Class and New York Sub-Class is so large as to make joinder impracticable, if not impossible. Class and New York Sub-Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**B.     Commonality**

94.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and New York Sub-Class that predominate over questions that may affect individual Class and New York Sub-Class members include:

(a)     Whether Rachael Ray Nutrish's practices and representations related to the marketing, labeling and sales of its Products were unfair, deceptive, fraudulent, and/or unlawful in any respect, thereby violating New York law;

(b)     Whether Rachael Ray Nutrish had a duty to disclose the presence of glyphosate in its Products;

(c)     Whether Rachael Ray Nutrish failed to warn Plaintiff and Class and New York Sub-Class Members of the presence of glyphosate in its Products and/or of the health effects of ingesting glyphosate in violation of New York law with its practices and representations related to the marketing, labeling, and sale of its Products;

(d)     Whether Rachael Ray Nutrish breached a warranty created through the labeling and marketing of its Products;

(e)     Whether Rachael Ray Nutrish's conduct as set forth above economically injured Plaintiff and New York Sub-Class Members; and

(f)     Whether Plaintiff and New York Sub-Class Members are entitled to injunctive relief.

**C.     Typicality**

95.     Plaintiff's claims are typical of those of the Class and New York Sub- Class, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and New York Sub-Class is common to the Class and New York Sub-Class members. Plaintiff, like all members of the Class and New York Sub-Class, relied on Defendant's false and misleading representations and purchased Rachael Ray Nutrish's Products, or paid more for Rachael Ray Nutrish's Products than Plaintiff would have paid if the products had been properly labeled, and sustained injury from Defendant's wrongful conduct. Further, there are no defenses available to Defendant that are unique to Plaintiff.

**D.     Adequacy**

96.     Plaintiff, will fairly and adequately protect the interests of the Class and New York Sub-Class. Plaintiff is an adequate representative of the Class and New York Sub-Class because his interests do not conflict with the interests of the Class and New York Sub-Class members he seeks to represent, and he has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class and New York Sub-Class. Undersigned counsel has represented consumers in a variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**E.     Predominance and Superiority of Class Action**

97.     The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class and New York Sub-Class Member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

98.     Individual joinder of the Class and New York Sub-Class Members is not practicable, and questions of law and fact common to the Class and New York Sub-Class predominate over any questions affecting only individual Class and New York Sub-Class Members. Each Class and New York Sub-Class Member has been damaged and is entitled to recovery as a result of the violations alleged herein.

99.     Moreover, because the damages suffered by individual members of the Class and New York Sub-Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class and New York Sub-Class Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

100.     Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

**F.        Declaratory and Injunctive Relief**

101.    Certification also is appropriate under Rule 23(b)(2) because Defendant acted, or refused to act, on grounds generally applicable to the Class and New York Sub-Class, thereby making appropriate the injunctive relief sought on behalf of the Class and New York Sub-Class. Further, given the large number of consumers of Rachael Ray Nutrish's Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**CAUSES OF ACTION**

**COUNT I**

**Violation of New York General Business Law § 349: Mislabeling**
**(On Behalf of the New York Sub-Class)**

102.    The acts of Rachael Ray Nutrish, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

103.    Rachael Ray Nutrish has labeled its Products as "Natural" when in fact the Products contain glyphosate, an unnatural biocide.

104.    Rachael Ray Nutrish has violated, and continues to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Rachael Ray Nutrish's violation of § 349, Plaintiff and other members of the New York Sub-Class have suffered damages in an amount to be determined at trial.

105.    Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural"—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Sub-Class Members to purchase and pay a premium for Defendant's Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

106.    Plaintiff and the New York Sub-Class Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not "Natural."

Accordingly, Plaintiff and the New York Sub-Class Members received less than what they bargained and/or paid for.

107.    Defendant's advertising and Products' packaging and labeling induced the Plaintiff and the New York Sub-Class Members to buy Defendant's Products and to pay a premium price for them.

108.    As a direct and proximate result of Defendant's violation of § 349, Plaintiff and other members of the New York Sub-Class paid a premium price for Defendant's falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

109.    In addition, Plaintiff seeks an order of this Court that includes, but is not limited to, enjoining Rachael Ray Nutrish from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

110.    Plaintiff and the other members of the New York Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

111.    The unfair and deceptive acts and practices of Rachael Ray Nutrish, as described above, present a serious threat to Plaintiff and the other members of the New York Sub-Class.

THEREFORE, Plaintiff prays for relief as set forth below.

## <u>COUNT II</u>

### Violation of the New York General Business Law § 350
### (On Behalf of the New York Sub-Class)

112.    The acts of Rachael Ray Nutrish, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

113.    New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

114.    GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

115.    Plaintiff and the members of the New York Sub-Class are consumers who purchased Rachael Ray Nutrish's Products in New York.

116.    As sellers of goods to the consuming public, Rachael Ray Nutrish is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

117.    Rachael Ray Nutrish's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Rachael Ray Nutrish's advertising fails to reveal material facts with respect to its Products, as described above, constitute false advertising in violation of the New York General Business Law.

118.    Rachael Ray Nutrish's false advertising was knowing and intentional.

119.    Rachael Ray Nutrish's actions led to direct, foreseeable, and proximate injury to Plaintiff and the New York Sub-Class.

120.    As a consequence of Rachael Ray Nutrish's deceptive marketing scheme, Plaintiff and the other members of the New York Sub-Class suffered an ascertainable loss, insofar as they would not have purchased Rachael Ray Nutrish's Products had the truth been known, or would have purchased Rachael Ray Nutrish's Products on different terms or would otherwise purchase a competing product, and paid a premium price for Defendant's falsely advertised Products, and as a result of Rachael Ray Nutrish's conduct, they received a product of less value than what they paid for.

121.    By reason of the foregoing, Rachael Ray Nutrish is liable to Plaintiff and the other members of the New York Sub-Class for actual damages or five hundred dollars ($500) for each sale of Rachael Ray Nutrish's Product (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

122.    Plaintiff and the other members of the New York Sub-Class further seek to enjoin the false advertising described above.

123.    Absent injunctive relief, Rachael Ray Nutrish will continue to deceptively market its Products.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT III

**Based on Breach of Express Warranty**
**(On Behalf of the Class and New York Sub-Class)**

124.    Rachael Ray Nutrish provided Plaintiff and other members of the Class and New York Sub-Class with written express warranties including, but not limited to, warranties that its Products are "Natural."

125.    These affirmations of fact or promises by Rachael Ray Nutrish relate to the goods and became part of the basis of the bargain.

126.    Plaintiff and members of the Class and New York Sub-Class purchased Rachael Ray Nutrish's Product believing them to conform to the express warranties.

127.    Rachael Ray Nutrish breached these warranties. This breach resulted in damages to Plaintiff and other members of the Class and New York Sub-Class, who bought Rachael Ray Nutrish's Products but did not receive the goods as warranted.

128.    As a proximate result of the breach of warranties by Rachael Ray Nutrish, Plaintiff and the other members of the Class and New York Sub-Class did not receive goods as warranted. Plaintiff and the members of the Class and New York Sub-Class therefore have been injured and have suffered damages in an amount to be proven at trial.

129.    Among other things, Plaintiff and members of the Class and New York Sub-Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class and New York Sub-Class members known the true facts, they would not have

purchased Rachael Ray Nutrish's Products, or would have purchased Rachael Ray Nutrish's Products on different terms.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT IV

### Unjust Enrichment
### (On Behalf of the Class and New York Sub-Class)

134.     As a result of Rachael Ray Nutrish's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of its Products, Rachael Ray Nutrish was enriched at the expense of Plaintiff and the other members of the Class and New York Sub-Class through the payment of the purchase price, or for the payment of a price higher than otherwise would have been paid, for Rachael Ray Nutrish's Products.

135.     Under the circumstances, it would be against equity and good conscience to permit Rachael Ray Nutrish to retain the ill-gotten benefits that it received from Plaintiff and the other members of the Class and New York Sub-Class, in light of the fact that the Products purchased by Plaintiff and the other members of the Class and New York Sub-Class were not what Rachael Ray Nutrish purported them to be. Thus, it would be unjust or inequitable for Rachael Ray Nutrish to retain the benefit without restitution to Plaintiff and the other members of the Class and New York Sub-Class for the monies paid to Rachael Ray Nutrish for Rachael Ray Nutrish's Products.

THEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on behalf of himself and the proposed Class and New York Sub-Class providing such relief as follows:

A.     Certification of the Class and New York Sub-Class proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff, Markeith Parks, as

representative of the Class and New York Sub-Class; and appointment of his undersigned counsel as counsel for the Class and New York Sub-Class;

     B.     A declaration that Rachael Ray Nutrish is financially responsible for notifying members of the Class and New York Sub-Class of the pendency of this suit;

     C.     An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Rachael Ray Nutrish as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

     D.     Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

     E.     Injunctive relief pursuant to New York General Business Law § 349 and common law, enjoining Rachael Ray Nutrish's unlawful and deceptive acts;

     F.     Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 350;

     G.     Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

     H.     Such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff, Markeith Parks, hereby demands a trial by jury.

DATED: August 1, 2018

                               **RICHMAN LAW GROUP**

                               *Kim E. Richman*
                               _____

            By:     Kim E. Richman
                    krichman@richmanlawgroup.com

81 Prospect Street
Brooklyn, New York 11201
Telephone: (718) 878-4707
Facsimile: (212) 687-8292

Michael J. Gabrielli
**GABRIELLI LEVITT LLP**
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

*Attorneys for Plaintiff and Proposed Classes*