# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARKEITH PARKS, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:18-cv-06936-LLS |
| AINSWORTH PET NUTRITION, LLC d/b/a RACHAEL RAY NUTRISH, | ) ) ) | Hon. Louis L. Stanton |
| Defendant. | ) ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## <u>MOTION TO DISMISS</u>

TABLE OF CONTENTS

Page

I.    Introduction ................................................................................................. 1

II.   Background ................................................................................................... 3

III.  Legal Standard ............................................................................................. 3

IV.   Argument ..................................................................................................... 4

      A.   Plaintiff's Claims Fail on the Merits and Should Be Dismissed ........................... 4

           1.   Plaintiff Fails to Allege Facts Demonstrating a Reasonable
                Consumer Would Be Materially Misled by Defendant's Statements ......... 4

                i.    Defendant's Labeling Is Not Materially Misleading ..................... 5

                ii.   A Reasonable Consumer Would Not Be Misled Given the
                      Regulatory Landscape .................................................... 6

           2.   Plaintiff's Breach of Express Warranty Claims Fail Because
                Defendant's Did Not Breach Any Warranty ............................................. 10

           3.   Plaintiff's Catch-all Claim for Unjust Enrichment Fails ......................... 11

           4.   Plaintiff's Request for Injunctive Relief Should Be Dismissed
                Because There Is No Threat of Future Injury ........................................... 12

      B.   The Procedural Flaws in Plaintiff's Claims Warrant Dismissal, Or,
           Alternatively, the Claims Should Be Stayed Until the FDA Issues
           Guidance Regarding the Use of the Term "Natural." ................................... 13

           1.   The Court Lacks Personal Jurisdiction with Respect to the Claims
                of Non-New York Residents ................................................................... 13

           2.   Plaintiff's Attempt to Apply New York Law to a Nationwide Class
                is Improper ............................................................................................. 17

           3.   Plaintiff's Claims Are Preempted by Federal Law ................................. 20

           4.   Alternatively, Plaintiff's Claims Should Be Stayed Under the
                Primary Jurisdiction Doctrine ............................................................... 23

V.    Conclusion ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................3

*Avola v. La.-Pac. Corp.*,
   991 F. Supp. 2d 381 (E.D.N.Y. 2013) ....................................................................10

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
   MDL No. 1967, 2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) ................................21

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017) ............................................................................................14

*Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco Cty.*,
   137 S. Ct. 1773 (2017) ...............................................................................14, 15, 16

*Chin v. Chrysler Corp.*,
   182 F.R.D. 448 (D.N.J. 1998) .................................................................................19

*Cipollone v. Liggett Grp., Inc.*,
   112 S. Ct. 2608 (1992) ............................................................................................20

*DaCorta v. AM Retail Grp, Inc.*,
   No. 16-CV-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ..................12

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ..............................................................................................14

*Dibartolo v. Abbott Labs.*,
   914 F. Supp. 2d 601 (S.D.N.Y. 2012) .....................................................................10

*EBC, Inc. v. Clark Bldg. Sys., Inc.*,
   618 F.3d 253 (3d Cir. 2010) ....................................................................................17

*Edgenet, Inc. v. GS1 AISBL*,
   742 F. Supp. 2d 997 (E.D. Wis. 2010) ....................................................................17

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ......................................................................................4

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   174 F.R.D. 332 (D.N.J. 1997) .................................................................................19

*FrontPoint Asian Event Drive Fund, L.P. v. Citibank, N.A.*,
  16 Civ. 5263 (AKH), 2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017)....................................16

*Gazzillo v. Ply Gem Industries, Inc.*,
  1:17-CV-1077 (MAD/CFH), 2018 WL 5253050 (N.D.N.Y. Oct. 22, 2018) .........................16

*Geier v. Am. Honda Motor Co.*,
  120 S. Ct. 1913 (2000)..........................................................................................................20

*In re Gen. Mills Glyphosate Litig.*,
  Civil File No. 16-2869, 2017 WL 2983877 (D. Minn., July 12, 2017)..........................8, 9, 11

*Gibson v. Quaker Oats Co.*,
  16-cv-4853, 2017 WL 3508724 (N.D. Ill. Aug. 14, 2017)........................................21, 22, 23

*In re Grand Theft Auto Video Game Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008) ......................................................................................18, 19

*Grund v. Del. Charter Guarantee & Trust Co.*,
  788 F. Supp. 2d 226 (S.D.N.Y. 2011).....................................................................................19

*Gubala v. CVS Pharmacy, Inc.*,
  No. 14 C 9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015) .................................................22

*Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*,
  105 S. Ct. 2371 (1985)............................................................................................................20

*In re Hydrogen, L.L.C.*,
  431 B.R. 337 (Bankr. S.D.N.Y. 2010).....................................................................................19

*In re Kind LLC "Healthy and All Natural" Litig.*,
  287 F. Supp. 3d 457 (S.D.N.Y. 2018).........................................................................3, 23, 24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016)..............................15

*Mantikas v. Kellogg Co.*,
  16-cv-2552 (SJF) (AYS), 2017 WL 2371183 (E.D.N.Y. May 31, 2017) ...............................18

*Marentette v. Abbott Labs., Inc.*,
  886 F.3d 112 (2d Cir. 2018)....................................................................................................20

*Marshall v. Hyundai Motor Am.*,
  51 F. Supp. 3d 451 (S.D.N.Y. 2014)........................................................................................11

*Nelson v. MillerCoors, LLC*,
  246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..................................................................................4, 5

*New York SMSA Ltd. P'ship v. Town of Clarkstown*,
    612 F.3d 97 (2d Cir. 2010).............................................................................20

*Nguyen v. New Link Genetics Corp.*,
    297 F. Supp. 3d 472 (S.D.N.Y. 2018)...............................................................3

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011)...........................................................17

*Paulino v. Conopco, Inc.*,
    No. 14-CV-5145 JG RML, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ............................12

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005)..............................................................................5

*In re PepsiCo, Inc. Bottled Water Mktg. & Sales Practices Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008)..............................................................22

*Perez v. B. Braun Med., Inc.*,
    17 Civ. 8512 (LLS), 2018 WL 2316334 (S.D.N.Y. May 9, 2018)......................................5, 6

*Podpeskar v. Dannon Co., Inc.*,
    16-cv-8478 (KBF), 2017 WL 6001845 (S.D.N.Y., Dec. 3, 2017) ...........................4

*In re Propranolol Antitrust Litigation*,
    249 F. Supp. 3d 712 (S.D.N.Y. 2017)...............................................................17

*Romero v. Flowers Bakeries, LLC*,
    No. 14-CV-05189-BLF, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016)....................................17

*Scholder v. Riviana Foods Inc.*,
    16-cv-6002(ADS)(AKT), 2017 WL 2773586 (E.D.N.Y. June 23, 2017) ..................23, 24, 25

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004)..............................................................................12

*Spratley v. FCA US LLC*,
    3:17-CV-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017)..............................................16

*U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*,
    230 F. Supp. 3d 253 (S.D.N.Y. 2017).................................................................4

*Union Tel. Co. v. Qwest Corp.*,
    495 F.3d 1187 (10th Cir. 2007) .......................................................................17

*United States v. Shimer*,
    81 S. Ct. 1554 (1961).........................................................................................20

*Walden v. Fiore,*
    134 S. Ct. 1115 (2014) .................................................................................. 15

*Waldman v. Palestine Liberation Org.,*
    835 F.3d 317 (2d Cir. 2016) ........................................................................ 15

*Weisblum v. Prophase Labs,*
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) .................................................... 11, 12

**Statutes**

21 U.S.C.A. § 343 ................................................................................................. 7

21 U.S.C.A. § 346(a)(1)(A), (a)(2)(A) ................................................................. 7

21 U.S.C. § 343-1(a)(2), (5) ............................................................................... 21

21 U.S.C. § 346(a) .............................................................................................. 21

21 U.S.C. § 346a(n)(4) .................................................................................. 22, 23

N.Y. Gen. Bus. Law § 349 .......................................................................... 1, 4, 5

N.Y. Gen. Bus. Law § 350 ............................................................................. 1, 4

N.Y.U.C.C .......................................................................................................... 10

N.Y.U.C.C. § 2-313 ............................................................................................ 10

**Other Authorities**

40 C.F.R. § 180.364 (2014) ................................................................................. 9

62 Fed. Reg. 17,723 at 17,725-26 ..................................................................... 21

80 Fed. Reg. 69,905-01 ......................................................................... 7, 22, 23

65 Fed. Reg. 80,547 ............................................................................................. 9

Julie Creswell, *Is It 'Natural'? Consumers, and Lawyers, Want to Know*, THE
    NEW YORK TIMES (Feb. 16, 2018) ............................................................... 25

USDA, BEHIND THE USDA ORGANIC SEAL,
    https://www.ams.usda.gov/sites/default/files/media/BehindTheUSDAOrganic
    Seal.png (last visited Aug. 17, 2018) ............................................................. 8

## I.     INTRODUCTION

Plaintiff Markeith Parks' Complaint rests on a mistaken characterization of the facts and the law. Plaintiff seeks to certify both a national and New York class based on allegations regarding the labeling of certain of Defendant Ainsworth Pet Nutrition, LLC d/b/a Rachael Ray Nutrish's ("Defendant" or "Nutrish") products. The crux of Plaintiff's argument is that Defendant deceived consumers by labeling Nutrish's Super Premium Food for Dogs (the "Products") "natural" because the Products allegedly contain glyphosate, a common herbicide. Strikingly, however, although the Complaint contains sensational allegations regarding glyphosate generally, it lacks any specifics related to the claims of Plaintiff or the purported class. For example, while the Complaint contains discussion about the alleged dangers of glyphosate generally, it does not include facts regarding the amount of glyphosate allegedly in the Products, whether that amount is allegedly harmful, or whether the Products comply with applicable regulations.

Plaintiff asserts four causes of action based on the "natural" label, counts under New York General Business Law §§ 349 and 350 (hereafter "§ 349" or "§ 350") (Counts I and II), which prohibit deceptive business practices and false advertising, a claim for breach of express warranty (Count III), and unjust enrichment (Count IV). He seeks to represent a New York sub-class under Counts I and II and a nationwide and New York sub-class under Counts III and IV. Plaintiff seeks various forms of monetary relief, punitive damages, and injunctive relief.

Plaintiff's claims fail for numerous reasons. As a matter of law, Defendant's conduct was not deceptive. Under §§ 349 and 350, a plaintiff must show the statements materially mislead a reasonable consumer, but Plaintiff's allegations do not meet this standard. Given the regulatory landscape, reasonable consumers would understand that products that say "natural" on the label may contain some amount of herbicide.

1

Plaintiff's claim for breach of express warranty is also without merit. Even assuming "natural" can be described as a warranty, Defendant did not breach any express warranty. Plaintiff does not dispute that the Products themselves are natural; rather he claims that these otherwise natural Products allegedly contain some unspecified amount of glyphosate.

Plaintiff also states a claim for unjust enrichment. This claim is improper as a matter of law because it is duplicative of Plaintiff's contract claims, and unjust enrichment claims are only proper in the absence of any viable contract or tort claims.

Plaintiff's request for injunctive relief must also be dismissed as Plaintiff has not shown any risk of future harm. Indeed, Plaintiff's allegations rest on the claim that Plaintiff and those similarly situated would not have purchased the Products if they had known of the possibility that the Products might contain some amount of herbicide. Now that Plaintiff claims he is aware that the Products allegedly contain herbicide, he is at no risk of continuing to purchase them.

Furthermore, and unrelated to the merits of the claims, Plaintiff's allegations contain several other fatal flaws. First, this Court may not exercise personal jurisdiction over the non-resident class members. Second, Plaintiff improperly seeks to apply New York common law to the unjust enrichment and breach of warranty claims of a purported nationwide class in contravention of New York's choice-of-law principles. Finally, Plaintiff's Complaint should either be dismissed because it is preempted by federal law or it should be stayed until the FDA issues guidance regarding the definition of "natural."

For these reasons and those stated below, Plaintiff's claims are defective as a matter of law and cannot be repaired through amendment. Therefore, Defendant respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

## II.   BACKGROUND

On August 1, 2018, Plaintiff filed this putative class action Complaint asserting four causes of action including: violations of New York General Business Law §§ 349 and 350 and state law claims for breach of express warranty and unjust enrichment. Compl. ¶¶ 14, 102-135. The Complaint rests entirely on the fact that the Products are labeled "natural." *See id*. ¶¶ 1-15, 26-84. Plaintiff claims these labels are deceptive because an independent laboratory allegedly discovered some amount of glyphosate (a common herbicide) on the Products. *Id*. ¶¶ 6-7, 32-67. Thus, he alleges, consumers were misled because a "natural" product would not have any amount of glyphosate. *Id*. ¶¶ 57-67. Indeed, Plaintiff claims that "had [he] known at the time that Rachael Ray Nutrish Products contained the unnatural biocide glyphosate, he would not have purchased or continued to purchase Rachael Ray Nutrish's Products." *Id*. ¶ 24. For these reasons, Plaintiff also seeks to certify a nationwide and New York sub-class consisting of all individuals who purchased the Products "from the beginning of any applicable limitations period through class certification." *Id*. ¶¶ 87-88.

## III.   LEGAL STANDARD

In evaluating a motion to dismiss, the court must accept all of the plaintiff's factual allegations as true. *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 482 (S.D.N.Y. 2018). However, the complaint must still contain sufficient factual matter to be plausible. *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint is plausible when the plaintiff has sufficiently pleaded enough factual allegations for the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Therefore, Plaintiff's factual allegations must still be sufficient to raise a right to relief above the speculative level. *In re Kind LLC "Healthy and All Natural" Litig.*, 287 F. Supp. 3d 457, 461 (S.D.N.Y. 2018). Finally, "[w]hile the Court should construe the factual allegations in the light most favorable to the plaintiff,

the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 259 (S.D.N.Y. 2017) (internal quotation marks omitted).

## IV.   ARGUMENT

### A.   Plaintiff's Claims Fail on the Merits and Should Be Dismissed

#### 1.   Plaintiff Fails to Allege Facts Demonstrating a Reasonable Consumer Would Be Materially Misled by Defendant's Statements

Plaintiff's claims on behalf of the New York sub-class for violations of §§ 349 and 350 should be dismissed. Plaintiff argues these violations occurred because the Products are labeled "natural" when the they allegedly contain some amount of glyphosate. Compl. ¶¶ 26-84, 102-23. Yet even assuming the Products contain glyphosate, Defendant did not violate §§ 349 and 350 by labeling the Products "natural," as a matter of law, because he fails to allege facts that would show such labeling is: (i) materially deceptive and (ii) would deceive a reasonable consumer.

Sections 349 and 350 prohibit deceptive business practices and false advertising, respectively. N.Y. Gen. Bus. Law § 349 (McKinney); N.Y. Gen. Bus. Law § 350 (McKinney). "To establish a *prima facie* case under either section 349 or 350, a plaintiff must demonstrate that '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 673-74 (E.D.N.Y. 2017) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). An act is deceptive if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Nelson*, 246 F. Supp. 3d at 673-74. Courts analyze whether a statement is misleading in a material way by using the objective, reasonable consumer standard. *Podpeskar v. Dannon Co., Inc.*, 16-cv-8478 (KBF), 2017 WL 6001845, at *3 (S.D.N.Y., Dec. 3, 2017). Importantly, even at the motion to dismiss stage, courts are empowered to make this determination

as a matter of law. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Podpeskar*, 2017 WL 6001845 at *3 (noting that although the reasonable consumer test is generally a factual inquiry, courts are empowered to determine, as a matter of law, that plaintiffs have not alleged a plausible allegation that a reasonable consumer would be deceived). Here, Plaintiff's allegations do not plausibly allege deceptive conduct in violation of §§ 349 or 350.

Even assuming that the use of "natural" on the Products becomes part of the label, Plaintiff's central allegation is that reasonable consumers would be misled because they would expect a product labeled "natural" to be free from any amount of glyphosate, *see, e.g.*, Compl. ¶¶ 1-15, 32-67, but is unsupported by law.

### i. Defendant's Labeling Is Not Materially Misleading

To state a claim under §§ 349 and 350, Plaintiff must show that Defendant engaged in deceptive conduct. *Nelson*, 246 F. Supp. 3d at 673-74. While claims under §§ 349 and 350 do not need to be pleaded under the particularity requirements of Rule 9(b), *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d. Cir. 2005), Plaintiff must still show Defendant engaged in deceptive conduct that was <u>materially</u> misleading. *Perez v. B. Braun Med., Inc.*, 17 Civ. 8512 (LLS), 2018 WL 2316334, at * 6 (S.D.N.Y. May 9, 2018) (Stanton, J.) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). But the Complaint does not allege facts regarding the materiality of Defendant's alleged misstatement.

While Plaintiff sounds the alarm about the alleged dangers of glyphosate, Compl. ¶¶ 47-55, the Complaint is devoid of any particulars as to this case, *see id.* ¶¶ 26-84. Moreover, in an apparent oversight, Plaintiff says he included exhibits with laboratory results which "reveal[] the amount of glyphosate in the Products." *Id.* ¶ 53. But these results, which would shed some light on Plaintiff's case, were not attached. *See* Dkt. No. 1.

Without identifying any particulars as it relates these Products and these purported class members, there is no basis for Plaintiff's claim that labeling the Products "natural" is *materially* misleading. *See* Compl. ¶¶ 57-67; *infra* Section IV.A.1.ii (illustrating that Defendant's conduct was in accordance with all regulations). Because Defendant's statements are not materially misleading, it did not, as a matter of law, engage in deceptive conduct under §§ 349 and 350. *Perez*, 2018 WL 2316334 at * 6.

For example, in *Perez v. B. Braun Medical*, this Court dismissed allegations under §§ 349 and 350 because the plaintiff failed to show a material misrepresentation in order to state a plausible claim under §§ 349 and 350. *Id*. at *6. In that case, the plaintiff was implanted with an inferior vena cava ("IVC") filter manufactured and sold by the defendants. *Id*. at *1. The plaintiff's IVC filter was implanted eight years before and was intended to be permanent. *Id*. Although the FDA warned of the risks of having an IVC filter implanted for longer than two months, *id*. at *2-3, this Court held that the plaintiff's allegations did not show any actual harm relating to her particular IVC filter, meaning she had not shown the statements were materially misleading, *id*. at *6 (dismissing claims under §§ 349 and 350 because although plaintiff noted that there may be side effects associated with long-term IVF filter implantation, the plaintiff had not alleged that her IVF filter had caused her any harm). For that reason, this Court dismissed the claim. *Id*.

The same is true here. Plaintiff fails to allege that the amount of alleged herbicide present could cause harm. Without any facts that go towards the materiality of the alleged misleading statement, the label is not deceptive, and the claims must be dismissed. *Id*.

### ii.     A Reasonable Consumer Would Not Be Misled Given the Regulatory Landscape

Plaintiff's claims also fail because no reasonable consumer has the expectations that Plaintiff alleges. The thrust of the Complaint is that a reasonable consumer would be misled by

learning that a product labeled "natural" contained any amount of glyphosate, no matter how minimal. *See* Compl. ¶¶ 57-67. However, as a matter of law, this assertion is blatantly incorrect. A reasonable consumer would not have such lofty expectations of products labeled "natural" for two reasons: (i) the Products are in compliance with all relevant regulations and no allegation suggests otherwise, and (ii) Plaintiff's assertion that "natural" products cannot contain any glyphosate would require "natural" products to meet a standard that was more strenuous than the most restrictive federal labeling requirements.

As an initial matter, the Products are in compliance with all federal regulations involving food labeling, which informs a reasonable consumer's beliefs. The Federal Food, Drug, and Cosmetic Act ("FFDCA") governs food labeling and does not require the disclosure of herbicides on labels. *See* 21 U.S.C.A. § 343 (Misbranded food). In fact, the FFDCA explicitly allows for certain pesticide and chemical residue so long as it is below the tolerance levels. 21 U.S.C.A. § 346(a)(1)(A), (a)(2)(A) (Tolerances and exemptions). Furthermore, FDA guidance regarding the meaning of "natural" in food labeling does not prohibit small amounts of herbicide and pesticide from being present on a product labeled "natural." In 2015, the FDA sought public comment regarding issuing guidance on the term "natural." *See Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments*, 80 Fed. Reg. 69,905-01 (Nov. 12, 2015). In that announcement, the FDA clarified that its longstanding position had been to define the term in a manner that excluded food production methods, including the use of pesticides and herbicides. *Id.* (explaining the FDA's previous guidance regarding the use of the term "natural" "was not intended to address food production methods, such as . . . the use of pesticides."). The FDA's clarification shows that Plaintiff's novel definition of "natural" is implausible as it relates to the reasonable consumer's understanding of the term. The fact that the

Products comply with the relevant regulations (a fact uncontroverted in the Complaint), should inform consumer expectations.

Additionally, Plaintiff's claims are not plausible because Plaintiff's allegation that any amount of glyphosate would be misleading to a reasonable consumer would then require "natural" products to meet higher standards than even the most stringent federal labeling standards. Unsurprisingly, in a nearly identical case, another district court dismissed similar allegations as implausible. *See In re Gen. Mills Glyphosate Litig.*, Civil File No. 16-2869 (MJD/BRT), 2017 WL 2983877, at *6 (D. Minn., July 12, 2017).

In *General Mills*, the plaintiff alleged that Nature Valley products labeled as "Made with 100% Natural Whole Grain Oats" were deceptive because the products contained trace amounts of glyphosate. In so holding, the court noted the absurd standards the plaintiff's argument required:

> [I]t is not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no trace glyphosate in Nature Valley Products or that a reasonable consumer would so interpret the label. It would be nearly impossible to produce a processed food with no trace of any synthetic molecule.

*Id.* at *6. Yet Plaintiff argues just that—because Defendant placed the term "natural" on the Products, a reasonable consumer now has an expectation higher than the most restrictive regulatory standards. *See,* Compl. ¶¶ 57-67.

Plaintiff's argument is further weakened considering the standard for labeling products as "organic." *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877 at *6. As the *General Mills* court noted, consumers recognize that certified organic products are held to a higher standard than products labeled "natural." *Id.* (citing *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979 (C.D. Cal. 2013)). Reasonable consumers understand that obtaining an organic certification requires that products meet high regulatory standards, which specifically include limitations on pesticides and

herbicides. *See, e.g.*, USDA, BEHIND THE USDA ORGANIC SEAL, https://www.ams.usda.gov/sites/default/files/media/BehindTheUSDAOrganicSeal.png (last visited Aug. 17, 2018) (stating that requirements for organic certification include requirements for food processing as well as prohibitions on certain pest-control materials). By contrast, calling a product "natural" is not subject to any regulations at all. Accepting Plaintiff's allegations regarding what reasonable consumers expect would obliterate that distinction and would hold all foods marketed as "natural" to a standard equal to or greater than the organic standard.

That said, products that meet the organic standard are allowed to contain herbicide residue. National Organic Program, 65 Fed. Reg. 80,547 (proposed Dec. 20, 2001) (effective date Feb. 20, 2001). Agricultural products are required to contain less than 5% of the EPA "tolerance for the specific residue detected on the agricultural product intended to be sold as organically produced." *See* Fed. Reg. 80,548-01, 80,629 (Dec. 21, 2000); *see* 40 C.F.R. § 180.364 (2014). But according to Plaintiff's theory, any amount of herbicide residue renders a product "not natural." Compl. ¶¶ 32-56. Plaintiff thus contends, *ipso facto*, that products that satisfy even the most restrictive organic standard cannot be permissibly labeled as natural. However, this further evidences the implausibility of Plaintiff's allegations. *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877 at *6. As the *General Mills* court explained:

> Here, the Products satisfy the federal standard for organic labelling with regard to the small amount of glyphosate found in the Products. Thus, it is not plausible that a product can satisfy the organic standard for biocides yet its label can be deemed [to] be false for stating that it is natural because it contains trace amount of biocides. Satisfaction of the organic standard might not be relevant for other types of "natural" claims. However, organic labelling rules are aimed at the exact issue in this case—the amount of pesticides and biocides applied to crops and found in products.

*Id.* Here too, Plaintiff's claims are not plausible.

9

For these reasons, Plaintiff's claims regarding violations of New York General Business Law §§ 349 and 350 should be dismissed.

### 2. Plaintiff's Breach of Express Warranty Claims Fail Because Defendant's Did Not Breach Any Warranty

Even assuming that "natural" constituted a basis of the bargain with consumers, Plaintiff's claims regarding breach of express warranty fail because Defendant did not breach any warranty.[1] Under New York law, claims for breach of express warranty are governed by the N.Y.U.C.C. *See Dibartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 624 (S.D.N.Y. 2012). "New York breach of express warranty claims require (i) a *material statement* amounting to a warranty; (ii) the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; (iii) the *breach* of this warranty; and (iv) injury to the buyer *caused* by the breach." *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (emphasis in original).

Here, Plaintiff argues that the term "natural" was an affirmation by Defendant as to the Products, which in turn became part of the basis of the bargain when customers purchased Defendant's products. *See* Compl. ¶¶ 124-133; N.Y.U.C.C. § 2-313 (McKinney). Plaintiff further alleges that Defendant's customers did not receive a "natural" product because the Products allegedly contained glyphosate at a level Plaintiff asserts is not relevant to his claim. *See* Compl. ¶¶ 32-67, 124-29. And, Plaintiff alleges, because the Products are not "natural," Defendant breached the express warranty. *Id*. But even assuming Defendant warranted that the Products were "natural," Plaintiff provides no evidence that consumers did not receive a natural product. Indeed, Plaintiff does not allege that any of the underlying ingredients are not "natural" or that the Products themselves are not "natural." *See* Compl. ¶¶ 124-129. Instead, Plaintiff claims that the presence of

---

[1] As discussed in greater detail in Section IV.B.2, *infra*, Plaintiff has failed to specify under which state's laws the claims for breach of express warranty (Count III) and unjust enrichment (Count IV) are brought and so, for the sake of this motion, Defendant will assume these claims are brought under New York law.

glyphosate, in any amount, renders an otherwise natural product unnatural. *See id*. ¶¶ 32-67, 124-129. As explained previously, *see supra* Section IV.A.1, Plaintiff's strained reading of what is promised by the term "natural" is not plausible. For that reason, Plaintiff's series of inferences does not hold, and this count should be dismissed.

For similar reasons, another court dismissed breach of warranty claims regarding the term "natural." *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877 at *7. In so doing, the court explained:

> [T]here is no dispute that the Products were made with whole grain oats that, themselves, are "100% Natural." Even if the glyphosate traces are present on the oats, there is no allegation that the oats, themselves, are not natural.

*Id*. Similarly, even if Defendant warranted a "natural" product, that warranty is read most logically as guaranteeing a product made up of individual, natural ingredients, instead of a product that uses "natural" agricultural methods and processing. This is especially true considering "[i]t would be nearly impossible to produce a processed food with no trace of any synthetic molecule." *Id*. at *6. Indeed, Plaintiff makes no allegation that, besides the alleged presence of a herbicide, the Products themselves are not natural. *See* Compl. ¶¶ 26-84. For these reasons, Plaintiff's claims for breach of express warranty should be dismissed.

### 3. Plaintiff's Catch-all Claim for Unjust Enrichment Fails

Plaintiff's unjust enrichment claims, Compl. ¶¶ 134-35, must be dismissed because Plaintiff already asserts claims for breach of express warranty, *see* Compl. Count IV, ¶¶ 124-133, which are claims grounded in contract, *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 472 (S.D.N.Y. 2014) (dismissing an unjust enrichment claim as duplicative when the plaintiffs already alleged a "conventional contract" claim by asserting a claim for breach of express warranty). But "[u]nder New York law, an unjust enrichment claim is available only in the unusual situations

when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Weisblum v. Prophase Labs*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (internal quotation marks omitted).

Plaintiff's claims do not entail such an unusual situation. Instead, Plaintiff acknowledges that ordinary contract claims are available by asserting a claim for breach of express warranty. Compl. ¶¶ 124-133. Because Plaintiff has other available claims, Plaintiff is inappropriately asserting a claim for unjust enrichment as a "catchall cause of action to be used when others fail." *Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML, 2015 WL 4895234, at *3 (E.D.N.Y. Aug. 17, 2015) (internal quotation marks omitted). For this reason, Plaintiff's unjust enrichment claim must be dismissed. *Weisblum*, 88 F. Supp. at 296-97.

### 4. Plaintiff's Request for Injunctive Relief Should Be Dismissed Because There Is No Threat of Future Injury

Among Plaintiff's requested relief, Plaintiff seeks an injunction against Defendant. Compl., Prayer for Relief (F). Yet an injunction is appropriate only when there is a threat of future harm. *Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004) (explaining that plaintiffs seeking injunctive relief must prove that the injury presents a "real and immediate threat of future injury"). In this case, Plaintiff has not pleaded any facts that he or the proposed class members will continue to purchase the Products. *See* Compl. ¶¶ 26-84. Quite the opposite, Plaintiff alleges that had he known the Products contained glyphosate, he would not have purchased them. *See* Compl. ¶¶ 11-13, 24 ("Had Parks known at the time that Rachael Ray Nutrish's Products contained the unnatural biocide glyphosate, he would not have purchased or continued to purchase Rachael Ray Nutrish's Products.").

To get around this problem, Plaintiff asserts that if the Products became "natural" according to Plaintiff's definition of "natural," he would "consider" purchasing the products again. Compl. ¶ 25. However, speculative claims regarding what Plaintiff might do in the future are not the sort of ongoing harm that warrants injunctive relief. *DaCorta v. AM Retail Grp, Inc.*, No. 16-CV-01748 (NSR), 2018 WL 557909, at *4-5 (S.D.N.Y. Jan. 23, 2018) (denying a plaintiff's request for injunctive relief when "there are no allegations that Plaintiff will purchase the defendant's products in the future) (internal quotation marks omitted). Because Plaintiff claims he is now aware that Defendant's Products allegedly contain some level of glyphosate, Plaintiff will no longer purchase the Products. He is, therefore, not at risk of future harm. Thus, injunctive relief is not warranted, and Plaintiff's claim should be dismissed.

## B. The Procedural Flaws in Plaintiff's Claims Warrant Dismissal, Or, Alternatively, the Claims Should Be Stayed Until the FDA Issues Guidance Regarding the Use of the Term "Natural."

### 1. The Court Lacks Personal Jurisdiction with Respect to the Claims of Non-New York Residents

Plaintiff's purported "national class" claims on behalf of consumers injured outside New York, Compl. ¶ 87, must be dismissed because the Court does not have personal jurisdiction over Defendant with respect to those out-of-state claims.

Defendant is a Pennsylvania corporation whose principal place of business is Meadville, Pennsylvania. Compl. ¶ 19. To establish jurisdiction, the Complaint alleges Plaintiff is a New York resident who purchased the Products in New York. *Id*. ¶ 21. In an attempt to bring in the claims of the non-resident class members, the Complaint provides a bare-bones allegation that Defendant manufactures and distributes the Products "throughout the United States" and national class members were "similarly affected [as the New York class] by the deceptive advertising" of Defendant. *Id*. ¶¶ 20, 92. Fatally though, Plaintiff alleges no facts regarding Defendant's contacts

with the forum state, New York, that would establish personal jurisdiction for the non-resident class members who did not purchase the Products in New York. *See id.* ¶¶ 19-84. Plaintiff's allegations that Defendant sells the Products elsewhere and the non-residents were harmed in a similar manner is insufficient to establish either general or specific jurisdiction as to the non-resident class members.

As it relates to general personal jurisdiction, Plaintiff's allegations do not meet the high bar to establish general personal jurisdiction. In order to establish personal jurisdiction over Defendant in New York, Plaintiff needs to allege Defendant's New York connections "are so constant and pervasive as to render [it] essentially at home" in New York. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (internal quotation marks omitted); *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (holding that Montana courts did not have general jurisdiction over BNSF Railway even though BNSF "has over 2,000 miles of railroad track and more than 2,000 employees" in the state, because even pervasive "in-state business" is not enough to support "general jurisdiction over claims . . . that are unrelated to any activity occurring in" the forum). But far from alleging Defendant is "essentially at home" in New York, Plaintiff admits Defendant is headquartered in Pennsylvania and also has its principal place of business in Pennsylvania. Comp. ¶ 19. These allegations are insufficient to establish general personal jurisdiction over Defendant in New York. *Daimler*, 134 S. Ct. at 760 (holding that a German corporation was not "at home" in the forum state so general personal jurisdiction was not proper).

Accordingly, Plaintiff then has the burden of establishing specific personal jurisdiction over Defendant with respect to the out-of-state residents.[2] Proving specific personal jurisdiction requires Plaintiff show the alleged controversy "arises out of or relates to the defendant's contacts

---

[2] Nutrish concedes Plaintiff has pled sufficient facts to warrant specific personal jurisdiction for the New York class defined as individuals "who purchased [the] Products . . . within the State of New York." Compl. ¶ 88.

with [New York]." *Daimler*, 134 S. Ct. at 749 (internal punctuation and citations omitted). In other words, specific personal jurisdiction depends on "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focusses on the relationship among the defendant, the forum and the litigation.") (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). For this reason, an exercise of specific jurisdiction requires that "the defendant's suit-related conduct [] create a substantial connection with the forum State" and that the contacts be "with the forum State itself, not . . . with persons who reside there." *Walden*, 134 S. Ct. at 1121-22. At bottom, "specific jurisdiction requires no less than a 'but for' connection between the defendant's forum-directed activities and the claim." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2016 WL 7378980, at *8 (S.D.N.Y. Dec. 20, 2016) (internal quotation marks omitted).

However, as mentioned previously, the only facts presented to establish personal jurisdiction over Defendant for the nationwide class are the allegations that: (i) Defendant's products are sold outside of New York and (ii) the non-resident class members were "similarly affected" by Defendant's conduct. Compl. ¶¶ 20, 92. These allegations do not show but-for causation between Defendant's conduct and New York and are, thus, insufficient for this Court to exercise specific personal jurisdiction over Defendant for the non-resident class members. *Bristol-Myers,* 137 S. Ct. at 1781-82. Accordingly, the claims of nonresident class members must be dismissed for lack of jurisdiction.

In *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, the Supreme Court reiterated the importance of ensuring the adherence to the fairness principles of the Due Process Clause when determining whether a court may exercise specific personal jurisdiction over a defendant. *Id*. at 1780. In that case, the Supreme Court reversed a California court's decision to exercise specific personal jurisdiction over a non-California company that manufactured the pharmaceutical Plavix. *Id*. at 1783-84. That case involved claims of hundreds of plaintiffs, most of whom were not California residents who had not purchased Plavix in California. *Id*. at 1777. Nevertheless, the California court claimed it had specific personal jurisdiction over the out-of-state plaintiffs because they had claims similar to those of the California residents. *Id*. at 1778-79. The Supreme Court disagreed, holding that specific personal jurisdiction for the nonresident claims was improper under the Fourteenth Amendment because there was no connection between the company's California contacts and the nonresident claims. *Id*. at 1781-82.

Moreover, although *Bristol-Myers* was a mass tort case, this principal is equally applicable in the class action context. Numerous New York courts have found that specific personal jurisdiction is inappropriate for nonresident class members whose injuries do not arise from events that occurred in New York. *FrontPoint Asian Event Drive Fund, L.P. v. Citibank, N.A.*, 16 Civ. 5263 (AKH), 2017 WL 3600425, at *6-7 (S.D.N.Y. Aug. 18, 2017); *Spratley v. FCA US LLC*, 3:17-CV-0062, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (dismissing the "out-of-state Plaintiffs [who] have shown no connection between their claims and Chrysler's contacts with New York"); *Gazzillo v. Ply Gem Industries, Inc*., 1:17-CV-1077 (MAD/CFH), 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018) (dismissing class action claims because the "Complaint contains neither (1) facts demonstrating Defendants' contract with New York, nor (2) facts showing a connection between New York and the out-of-state Plaintiffs' claims"). As the court explained in

*In re Dental Supplies Antitrust Litigation*, the due process requirements apply with equal force in the class action context:

> Plaintiffs attempt to side-step the due process holdings in *Bristol-Myers* by arguing that the case has no effect on the law in class actions because the case before the Supreme Court was not a class action. This argument is flawed. The constitutional requirements of due process does not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case.

16 Civ. 696 (BMC)(GRB), 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (citing *King Cty. v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 315 (S.D.N.Y. 2011)). Because Plaintiff pleads no facts showing a connection between New York and the claims of the national class, the claims of the national class must be dismissed for lack of specific personal jurisdiction.

### 2. Plaintiff's Attempt to Apply New York Law to a Nationwide Class is Improper

Plaintiff also alleges claims for breach of express warranty (Count III) and unjust enrichment (Count IV) on behalf of the nationwide class and New York sub-class. Compl. ¶¶ 124-135. However, Plaintiff fails to specify under which state's law those claims are brought. *See id*. The fact that Plaintiff fails to specify the governing state law mandates their dismissal. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 667 (E.D. Mich. 2011) (dismissing unspecified unjust enrichment claim pleaded on behalf of nationwide class because "[s]tate law requirements under unjust enrichment law vary widely"); *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016) ("due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal" when such relief is sought on behalf of a nationwide class).[3] To the extent Plaintiff is playing fast

---

[3] Defendant acknowledges that the court in *In re Propranolol Antitrust Litigation*, 249 F. Supp. 712 (S.D.N.Y. 2017) declined to adopt this argument, but respectfully submits that the case was decided incorrectly. The opinion in that case rested on the court's determination that unjust enrichment law is the same from state to state. *Id*. at 729.

and loose with his vague reference to breach of express warranty and unjust enrichment, intending to plead the laws of the 50 states and the District of Columbia, that is exactly what courts like *Packaged Ice* and *Romero* were intending to prohibit. The same should apply here.

Setting aside the failure to specify the state law under which these counts have been brought, it would be improper to apply New York's breach of express warranty and unjust enrichment laws to the purported nationwide class. "[A] federal court generally must apply the choice-of-law principles of the state in which it sits," *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008), and New York jurisprudence holds that unjust enrichment and breach of warranty claims must be evaluated under the laws of either the plaintiff's home state or the state where the product-at-issue was purchased.

Plaintiff attempts to shortcut the pleading standards of Federal Rule of Civil Procedure 8 common law causes of action for both a nationwide and New York sub-class for unnamed putative class members who allegedly purchased Defendant's Products. *See* Compl. ¶¶ 124-135. New York's choice-of-law provisions make clear that the laws of each plaintiff's home state must apply to their unjust enrichment and breach of warranty claims. *See In re Grand Theft Auto Video Game*, 251 F.R.D. at 149. Put another way, Plaintiffs cannot assert claims for unjust enrichment or breach of warranty under the laws of a state in which they neither reside nor purchased the product at issue. *See Mantikas v. Kellogg Co.*, 16-cv-2552 (SJF) (AYS), 2017 WL 2371183, at *7 (E.D.N.Y. May 31, 2017) (dismissing an unjust enrichment claim brought under Michigan law even though plaintiffs were residents of, and purchased the product-at-issue in, New York and California).

---

However, substantial differences exist from state to state. *Compare Union Tel. Co. v. Qwest Corp.*, 495 F.3d 1187, 1197 (10th Cir. 2007) (applying Wyoming law); *with Edgenet, Inc. v. GS1 AISBL*, 742 F. Supp. 2d 997, 1032 (E.D. Wis. 2010) (applying Wisconsin law); *with EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (applying Pennsylvania law). For this reason, Plaintiff should be required to specify the state whose law Defendant allegedly violated.

New York uses the "significant contacts" test in evaluating unjust enrichment and breach of warranty claims. This standard "focuses upon (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter, and (5) the domicile or place of business of the contracting parties." *In re Grand Theft Auto Video Game*, 251 F.R.D. at 149 (citing *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 618 (N.Y. 1994)). Case law makes clear that the significant contacts test requires the application of the law of the state of purchase for such claims. *Id.; see also Grund v. Del. Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226, 251 n.9 (S.D.N.Y. 2011) ("Under New York choice of law rules, interest analysis is applied to claims arising in equity, such as claims for unjust enrichment. . . . As with the tort claims, the states in which Plaintiffs resided have the most significant contacts, as they are the places of contracting, where performance was to occur, and where Plaintiffs suffered losses."); *In re Hydrogen, L.L.C.*, 431 B.R. 337, 359 (Bankr. S.D.N.Y. 2010) ("The law of the place where the allegedly [sic] actions giving rise to the unjust enrichment claim occurred—should also govern the unjust enrichment claim."); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) (applying law of each plaintiff's "home state" to breach of warranty claims); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 347-48 (D.N.J. 1997) (same).[4]

As such, the Court must dismiss Plaintiff's breach of warranty and unjust enrichment causes of action (Counts III and IV) because they improperly seek to apply New York law to the purported nationwide class when New York choice-of-law provisions clearly state that the law of each purported class member's home state should apply.

---

[4] In *Chin* and *Ford Ignition Switch*, the term "home state" is used to describe "the place where Plaintiffs reside, or the place where Plaintiffs bought and used their allegedly defective [products] or the place where Plaintiffs' alleged damages occurred." *Chin*, 182 F.R.D. at 457; *Ford Ignition Switch*, 174 F.R.D. at 348.

### 3.      Plaintiff's Claims Are Preempted by Federal Law

Beyond the merits of his allegations, Plaintiff's Complaint must also be dismissed because it is preempted by federal legislation and regulations. While Plaintiff contends that Defendant was required under state law to disclose any alleged presence of glyphosate (Compl. ¶ 35 ("Failing to disclose that a product contains glyphosate is an omission of material fact")), federal legislation and regulation, as well as recent case law, make clear that federal law preempts any such requirement.

Under the Constitution's Supremacy Clause, "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Grp., Inc.*, 112 S. Ct. 2608, 2617 (1992); U.S. Const. art. VI, cl. 2. Federal law may preempt state law where: (1) Congress expressly preempts state law ("express preemption"); (2) Congress has legislated so comprehensively that federal law occupies an entire field of regulation, leaving no room for state law ("field preemption"); or (3) local law conflicts with federal law in such a way that it is impossible to comply with both, or local law is an obstacle to the achievement of federal law ("conflict preemption"). *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103-04 (2d Cir. 2010). Supreme Court precedent is clear that state law can be preempted by both federal statutes *as well as* federal regulations and agency requirements. *See, e.g.*, *Hillsborough Cty, Fla.. v. Automated Med. Labs., Inc.*, 105 S. Ct. 2371, 2375 (1985). Where Congress has delegated authority to an agency to exercise its discretion in interpreting a statute, the agency's judgments are subject to judicial review only to determine whether the agency exceeded its statutory authority or acted arbitrarily. *See United States v. Shimer*, 81 S. Ct. 1554, 1560 (1961) (quoting *Bates & Guild Co. v. Payne*, S. Ct. 595, 597 (1904)).

Conflict preemption applies where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 117-18 (2d Cir. 2018) (internal citations omitted) (holding it impossible to rule in

plaintiffs' favor "without contradicting the certification decision, and, through it, the certification scheme" enacted by Congress); *Geier v. Am. Honda Motor Co.*, 120 S. Ct. 1913, 1920-22 (2000) (finding claim related to airbag requirement was preempted where a U.S. Department of Transportation regulation provided vehicle manufacturers with a range of choices among different restraint devices).

Here, federal law expressly preempts any state law requiring that glyphosate be listed as an "ingredient" on food labels. *See* Compl. ¶ 9 (contending that Defendant "deceiv[ed] consumers about the nature, quality, and/or ingredients of the Products"). The FFDCA's express preemption provision declares that no state "may directly or indirectly establish . . . any requirement for the labeling of food . . . that is not identical to the requirement" of the relevant federal regulations. 21 U.S.C. § 343-1(a)(2), (5). Indeed, "it is obvious that Congress intended to prohibit states from imposing food labeling requirements on manufacturers." *Gibson v. Quaker Oats Co.*, 16-cv-4853, 2017 WL 3508724, at * 4 (N.D. Ill. Aug. 14, 2017) (dismissing a nearly identical proposed consumer class action alleging deceptive advertising due to alleged presence of glyphosate as preempted by federal law).

Additionally, neither the FDA nor Congress requires that glyphosate residue in food products be disclosed. The Environmental Protection Agency ("EPA") has ***approved*** of glyphosate's presence on certain food products in quantities up to 30 parts per million ("ppm"). 62 Fed. Reg. 17,723 at 17,725-26. The EPA has found that "[t]here is *no concern* for acute effects due to dietary exposure to glyphosate," and "there is reasonable certainty that *no harm will occur* from aggregate exposure to glyphosate at levels below 30 ppm. *Id.* (emphasis added). State law, through a private civil consumer fraud claim, cannot impose food labeling terms contrary to these findings. "To rule otherwise would permit a state to impose almost any requirement on food

21

labeling that conceivably could concern food safety, a result Congress surely did not intend." *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, MDL No. 1967, 2009 WL 3762965, at *6 (W.D. Mo. Nov. 9, 2009). Here, 21 U.S.C. § 346(a) addresses the presence of herbicides in foods and there is a sub-section addressing a state's authority to "establish or enforce any regulatory limit on a qualifying pesticide chemical residue in or on any food if a qualifying Federal determination applies[.]" 21 U.S.C. § 346a(n)(4). Congress' express intention that states not interfere with such regulations expressly preempts Plaintiff's attempt to have the court declare that glyphosate must be disclosed.

Plaintiff's allegations that state law imposes a duty to disclose the alleged presence of glyphosate residue would create food labeling requirements not identical to federal regulation; as such, these claims are preempted by federal law. *See In re PepsiCo, Inc. Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 539 (S.D.N.Y. 2008) (finding that requirement of disclosure that purified water came from tap water was preempted as exceeding federal disclosure requirements); *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *3 (N.D. Ill. June 16, 2015) ("States can impose a requirement that is identical to those imposed by the FFDCA, but not different from or more burdensome than those requirements") (internal citations omitted). Furthermore, finding Defendant's "natural" labels false or misleading under state law would be in conflict with FDA regulations that do not address food production methods. *See* 80 Fed. Reg. 69,905-01, 69,907. The *Gibson* court succinctly summarizes the state of the law on this topic: "Because Congress has preempted the field of food labeling and because the presence of pesticides and chemical residues is governed by federal statute, Plaintiff's cannot challenge [the defendant's] labeling under state or common law. The result is that Plaintiff's cannot state a claim for relief."

*Gibson*, 2017 WL 3508724, at * 4. As in *Gibson*, Plaintiff's claims should be dismissed without leave to amend because they are preempted by federal law. *Id.*

Finally, Plaintiff's claims that the Product's "natural" statement is false and misleading due to the alleged presence of glyphosate is preempted by a FDA proposed regulation regarding the use of the term "natural" in food labeling. The FDA has established that the term "natural" was not intended to relate to production methods. *See* Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69,905-01, 69,906 ("[T]he use of the term 'natural,' . . . was not intended to address food production methods, such as . . . *the use of pesticides*, . . . nor did it explicitly address food processing or manufacturing methods.") (emphasis added).[5] Examining the same issue, the court in *Gibson* held that the FDA's proposed regulation of "natural," coupled with the federal statutory requirements of 21 U.S.C. § 346a(n)(4), constituted field preemption barring any state action concerning food labeling where the presence of a herbicide is at issue. *Gibson*, 2017 WL 3508724, at *4. Accordingly, finding that the Products' "natural" labeling is false or misleading under state law would fly in the face of federal regulations, and should therefore be dismissed as expressly preempted.

### 4. Alternatively, Plaintiff's Claims Should Be Stayed Under the Primary Jurisdiction Doctrine

Alternatively, even if this Court does not find Plaintiff's claims preempted by federal law, Plaintiff's claims should be stayed under the primary jurisdiction doctrine.

Under the primary jurisdiction doctrine, the court may exercise its discretion and abstain from hearing a case when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."

---

[5] While the FDA has signaled its intention to provide further clarification regarding the term "natural," as discussed in this brief, *infra* Section IV.B.4, unless and until the FDA provides contradictory guidance, the FDA's previous guidance should not be disregarded.

*In re Kind LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 464 (S.D.N.Y. 2018). The doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Scholder v. Riviana Foods Inc.*, 16-cv-6002(ADS)(AKT), 2017 WL 2773586, at *3 (E.D.N.Y. June 23, 2017) (noting that the doctrine's "essential aim" is to properly allocate decision-making authority between the courts and the relevant administrative agencies) (internal citations omitted). When deciding whether to stay a case, New York courts consider five factors, none of which is dispositive: (1) whether the issue is within the conventional wisdom of the courts; (2) whether the issue is within the relevant administrative agency's discretion; (3) whether litigating the claims would cause a substantial danger of inconsistent rulings; (4) whether the parties have made a prior application to the relevant administrative agency; and (5) whether waiting for the relevant administrative agency to decide the matter would cause substantial delay. *In re Kind LLC, "Healthy & All Natural" Litig.*, 287 F. Supp. 3d at 464-65.

As relevant here, in confronting similar cases, numerous courts, including New York federal courts, have invoked the primary jurisdiction doctrine because the FDA has said that it plans to issue further guidance regarding the use of the term "natural" in food packaging. *Scholder*, 2017 WL 2773586, at *2 (listing the cases that have stayed litigation pending the FDA's guidance on this matter).

In particular, in *Scholder v. Riviana Foods Inc.*—an analogous putative consumer class action regarding the use of the term "natural" on the packaging of products that allegedly contained trace amounts of glyphosate—the court analyzed the primary-jurisdiction-doctrine factors and determined the case should be stayed. *Id.* at *3 ("Having reviewed these authorities, this Court now joins the growing number of courts who have deferred to the FDA's expert and specialized

24

knowledge on this subject, and await pertinent guidance on the permissible uses of the term 'natural' in food labeling."). In so deciding, the court placed particular emphasis on the following factors: (1) determining whether the presence of agricultural byproducts is misleading is within the scope of the FDA's discretion, (2) whether awaiting FDA guidance would eliminate the risk of inconsistent rulings, and (3) whether the impact of the delay in the case was outweighed by the fact that the FDA had already initiated proceedings on this matter.[6] For the same reasons here, Plaintiff's claims should be stayed pending guidance from the FDA. Determinations regarding food labeling are within the FDA's discretion and specialized knowledge. *Id*. (deferring to "the FDA's expert and specialized knowledge on this subject"). Awaiting FDA guidance will harmonize these cases and guard against the risk of inconsistent rulings. *Id*. Finally, the delay in this case will likely be minimal in light of the FDA's recent comments, *see* Julie Creswell, *Is It 'Natural'? Consumers, and Lawyers, Want to Know*, THE NEW YORK TIMES at 5 (Feb. 16, 2018), and is outweighed by the benefit of having the FDA issue guidance first.

## V.      CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint in its entirety. In addition, because Plaintiff has no ability to remedy the deficiencies warranting dismissal, Defendant respectfully requests that dismissal be made with prejudice. In the alternative, Defendant respectfully requests that this Court stay the action until the FDA issues guidance regarding the use of the term "natural" in food labeling.

---

[6] Because the FDA began the process of issuing updated guidance in late 2015, Plaintiff may argue that this Court should not stay the proceeding because of concerns of delay. However, FDA Commissioner Dr. Scott Gottlieb recently publicly stated the FDA will be providing guidance on this issue "soon." Julie Creswell, *Is It 'Natural'? Consumers, and Lawyers, Want to Know*, THE NEW YORK TIMES at 5 (Feb. 16, 2018).

Dated: October 29, 2018                    Respectfully submitted,

                                           WINSTON & STRAWN LLP


                                           /s/ Ronald Y. Rothstein
                                           Ronald Y. Rothstein
                                           Adrianne K. Rosenbluth (*pro hac vice*)
                                           WINSTON & STRAWN LLP
                                           35 West Wacker Drive
                                           Chicago, Illinois 60601
                                           (312) 558-5600
                                           RRothste@winston.com
                                           ARosenbluth@winston.com

                                           Christopher Hynes
                                           WINSTON & STRAWN LLP
                                           200 Park Avenue
                                           New York, New York 10166
                                           (212) 294-6700
                                           CHynes@winston.com

                                           *Counsel for Defendant Ainsworth Pet*
                                           *Nutrition d/b/a Rachael Ray Nutrish*