# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARKEITH PARKS, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 1:18-cv-06936-LLS |
| v. | ) ) | |
| AINSWORTH PET NUTRITION, LLC d/b/a RACHAEL RAY NUTRISH, | ) ) ) | Hon. Louis L. Stanton |
| Defendant. | ) ) ) | |

# MEMORANDUM IN OPPOSITION TO
## <u>DEFENDANT'S MOTION TO DISMISS</u>

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 1

ARGUMENT ......................................................................................................... 4

I.   THE CLAIMS FOR VIOLATION OF GBL §§ 349 AND 350 ARE SUFFICIENTLY PLEADED. ....... 5

   A.   The Complaint Sufficiently Pleads Material Misrepresentation. ..................................... 8

   B.   The "Regulatory Landscape" Does Not Protect Deceptive Marketing. ....................... 11

      1.   Compliance With Federal Regulations on Pesticide Residue Is Irrelevant to Compliance With State Consumer-Protection Standards. ................................................. 11

      2.   The FDA Does Not Provide Guidance on Whether "Natural" Can Be Used to Describe Products That Contain a Synthetic Biocide. ...................................................... 12

      3.   A "Reasonable Consumer" Is Not Presumed to Understand Pesticide Residue Allowances..................................................................................................... 14

      4.   Plaintiff Is Not Seeking Any Requirement "More Strenuous" Than Federal Law... 15

      5.   Federal Organic Standards Do Not Inform What "Natural" Means to Reasonable Consumers........................................................................................................ 16

III.   THE CLAIMS FOR BREACH OF WARRANTY AND FOR UNJUST ENRICHMENT ARE PROPERLY PLEADED.................................................................................................... 17

   A.   Plaintiff Properly States a Claim for Breach of Warranty. ........................................... 18

   B.   Plaintiff Properly States a Claim for Unjust Enrichment............................................. 20

IV.   RACHAEL RAY NUTRISH'S ARGUMENT ABOUT "THREAT OF FUTURE INJURY" DOES NOT COMPORT WITH NEW YORK LAW. ................................................................................ 22

V.   RACHAEL RAY NUTRISH CANNOT HIDE BEHIND ALLEGED "PROCEDURAL FLAWS" THAT RELATE ONLY TO CLASS CERTIFICATION, NOT TO THE SUFFICIENCY OF THE PLEADING. .......... 23

VI.   THE CLAIMS ARE NEITHER PREEMPTED NOR SUBJECT TO THE DOCTRINE OF PRIMARY JURISDICTION. ........................................................................................................ 26

   A.   Plaintiff Parks's Claims Are Not Preempted by Federal Law. ..................................... 27

      1.   By the Very Terms of the Statute, Express Preemption Does Not Apply. ............... 29

      2.   Congress Has Explicitly Stated That Field Preemption Does Not Apply. ............... 30

3.    Conflict Preemption Does Not Apply Because There Is No Conflict With Federal Law. ................................................................................................................. 31

B.    There Is No Guidance Forthcoming, and No Reason to Defer to Any Agency Under the Doctrine of Primary Jurisdiction. .................................................................... 33

**CONCLUSION** ........................................................................................................... **37**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166 (2d Cir. 2013) ........................... 4

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185 (S.D.N.Y. 2009) ........................................................................................................................................... 21

*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 758 (9th Cir. 2015).................................... 30

*Ault v. J.M. Smucker Co.*, 2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014)............. 31, 33

*Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381 (E.D.N.Y. 2013) ................................... 18

*Ayala v. Looks Great Servs.*, No. 14-cv-6035, 2016 U.S. Dist. LEXIS 81912 (E.D.N.Y. June 23, 2018) ........................................................................................................................................ 36

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) ........................................................ 27

*Bell v. 3M Co.*, Nos. 16-cv-02351, 16-cv-02394, 16-cv-02352, 2018 U.S. Dist. LEXIS 163609 (D. Colo. Sept. 25, 2018) .......................................................................................................... 22

*Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474, 2015 U.S. Dist. LEXIS 70976 (S.D.N.Y. June 2, 2015) ................................................................................................................................... 22

*Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531 (9th Cir. 2016) ................................. 34

*Briarpatch, Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004)............................. 21

*Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)............................ 28

*Cannon v. Ashburn Corp.*, No. 16-1452, 2016 U.S. Dist. LEXIS 169040 (D.N.J. Dec. 7, 2017) 25

*Catholic Health Care West v. US Foodserv.* (*In re US FoodServ. Pricing Litig.*), 729 F.3d 108 (2d Cir. 2013) ............................................................................................................................ 17

*CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997 (N.Y. 1990) ................................................ 18

*Cf. Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015)..................................................... 35

*Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991).............. 21

*Clark v. McDonald's Corp.*, 213 F.R.D. 198 (2003)................................................................... 26

*Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426 (S.D.N.Y. 2012)...................... 20

*Dacorta v. AM Retail Group, Inc.*, No. 16-CV-01748, 2018 U.S. Dist. LEXIS 10733 (S.D.N.Y. Jan. 23, 2018).......................................................................................................................... 23

*DeLuca v. NWC Warranty Corp.*, No. 11-3768, 2013 U.S. Dist. LEXIS 195881 (E.D. Ore. July 22, 2013) ................................................................................................................................... 25

*Ehrhart v. Synthes (USA)*, Civil Action No. 07-01237, 2007 U.S. Dist. LEXIS 94760 (D.N.J. Dec. 21, 2007).......................................................................................................................... 26

*Eidelman v. The Sun Prods. Corp.*, No. 16-cv-3914 (NSR), 2017 U.S. Dist. LEXIS 156420 (S.D.N.Y. Sept. 25, 2017)............................................................................................................7

*English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).................................................................. 31

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................................................................4

*Festa v. Local 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35 (2d Cir. 1990)...................... 19

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013).............................................................7

*Gibson v. Quaker Oats Co.*, No. 16 CV 4853, 2017 U.S. Dist. LEXIS 130696 (N.D. Ill. Aug. 14, 2017) ........................................................................................................................................ 31

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) ............................................................................................................................................7

*Gotlin v. Lederman*, 483 Fed. App'x. 583 (2d Cir. 2012) ............................................................5

*Grimm v. APN, Inc.*, No. 17-00356, 2017 U.S. Dist. LEXIS 206700 (C.D. Cal. Nov. 20, 2017).. 1

*Gutierrez v. Johnson & Johnson, Inc.*, No. 01-5302, 2002 U.S. Dist. LEXIS 15418 (D.N.J. 2002) ................................................................................................................................................. 26

*Hall Special Situations Inv. Fund v. Basix Corp.*, No. 91 Civ. 1202 (CSH), 1994 U.S. Dist. LEXIS 4653 (S.D.N.Y. Apr. 14, 1994) ................................................................... 10

*Hannah v. Metro-North C. R. Co.*, 753 F. Supp. 1169 (S.D.N.Y. 1990).................................... 19

*Hardy v. Fischer*, 701 F. Supp. 2d 605 (S.D.N.Y. 2010) ........................................................... 10

*Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2018 U.S. Dist. LEXIS 167345 (S.D. Ohio Sept. 28, 2018) ................................................................................................................................... 26

*Hazlin v. Botanical Labs., Inc.*, No. 13cv0618, 2013 U.S. Dist. LEXIS 143663 (S.D. Cal. Aug. 8, 2013) ................................................................................................................................... 26

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985)................................... 31

*Holk v. Snapple Bev. Corp.*, 575 F.3d 329 (3d Cir. 2009) ........................................................ 14

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, MDL No. 2705, 2018 U.S. Dist. LEXIS 187031 (N.D. Ill. Nov. 1, 2018)....................................................................... 15

*In re Amla Litig.*, 2017 U.S. Dist. LEXIS 116139 .................................................................. 23

*In re Buspirone Patent & Antitrust Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002) ...................... 25

*In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39 (E.D.N.Y. 1991) ............................................... 25

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013).............................................................................. 8, 14, 16, 25

*In re General Mills Glyphosate Litigation*, No. 16-2869, 2017 U.S. Dist. LEXIS 108469 (D. Minn. July 12, 2017)...................................................................................... 15, 20

*In re General Mills, Inc.*, No. 12-249, 2016 U.S. Dist. LEXIS 76723 (D.N.J. June 13, 2016).... 37

*In re Hain Celestial Seasonings Prods. Consumer Litig.*,  No. SACV 13-1757, 2016 U.S. Dist. LEXIS 153565 (C.D. Cal. Aug. 8, 2016)...................................................................... 37

*In re Jamster Mktg. Litig.*, MDL No. 1751, 2009 U.S. Dist. LEXIS 43592 (S.D. Cal. May 22, 2009) ................................................................................................................................... 25

*In re Kind LLC "Healthy & All Natural" Litigation*, 287 F. Supp. 457 (S.D.N.Y. 2018)..... 34, 37

*In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656 (S.D.N.Y. 1997) .................................... 22

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) ..................................................... 6

*In re US FoodServ. Pricing Litig.*, 729 F.3d........................................................................... 24

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942 (N.D. Ohio 2009) ....................................................................................................................... 24

*In re: Simply Orange Orange Juice Marketing & Sales Practices Litigation*, MDL No. 2361, 2013 U.S. Dist. LEXIS 28080 (W.D. Mo. Mar. 1, 2013)..................................................... 12

*Jabo's Pharm., Inc. v. Becton Dickinson & Co.* (*In re Hypodermic Prods. Antitrust Litig.*), 2007 U.S. Dist. LEXIS 47438 (D.N.J. June 29, 2007) ................................................................ 26

*Johnson v. Nextel Communs. Inc.*, 780 F.3d 128 (2d Cir. 2015) ................................................. 17

*JTH Tax, Inc. v. Gouneh*, 721 F. Supp. 2d 132 (N.D.N.Y. 2010) ................................................ 21

*Kacocha v. Nestle Purina Petcare Co.*, 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097 (S.D.N.Y. Aug. 12, 2016).................................................................................................. 7

*Karlin v IVF Am.*, 690 NYS2d 495 (1999) .................................................................................... 5

*Koh v. S.C. Johnson & Son, Inc.*, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 5, 2010) ............ 25

*Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017)............................................... 23

*Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009) ............................... 35

*Lonner v. Simon Prop. Grp., Inc.*, 57 A.D.3d 100 (2008) ...................................................... 5, 9

iv

*Manier v. L'Oreal U.S.A., Inc.* (*In re Amla Litig.*), Nos. 16-cv-6593, 17-cv-111, 2017 U.S. Dist. LEXIS 116139 (S.D.N.Y. July 17, 2001) ............................................................................. 22

*Marino v. Northwestern Mut. Life Ins. Co.*, No. 00 Civ. 3212, 2001 U.S. Dist. LEXIS 2670 (S.D.N.Y. Mar. 14, 2001) ............................................................................................................. 22

*Maywalt v. Parker & Parsley Petro. Co.*, 147 F.R.D. 51 (S.D.N.Y. 1993) ................................ 25

*Murphy v. Natl. Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018).............................................. 29

*National Consumers League v. Doctor's Associates*, No. 2013 CA 006549, 2014 D.C. Super. LEXIS 15 (Sept. 12, 2014) ......................................................................................................... 35

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012)... 25

*New York State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114 (2d Cir. 2009) ................ 27

*O'Neill v. Std. Homeopathic Co.*, No. 16-cv-8687 (KMK), 2018 U.S. Dist. LEXIS 168807 (S.D.N.Y. Sept. 28, 2018)............................................................................................................. 6

*Odom v. Matteo*, 772 F. Supp. 2d 377 (D. Conn. 2011) ............................................................ 36

*Organic Consumers Ass'n v. General Mills, Inc.*, No. 2016 CA 6309 B, 2017 D.C. Super. LEXIS 4 (July 6, 2017) ......................................................................................................... 2, 16, 20, 34

*Organic Consumers Assn. v. R.C. Bigelow, Inc*., 314 F. Supp. 3d 344  (D.D.C. 2018).............. 32

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20 (1995) ...................................................................................................................................... 5, 10

*Outerbridge v. City of New York*, No. 13-cv-5459 (AT), 2015 U.S. Dist. LEXIS 136379 (S.D.N.Y. Sept. 30, 2015) ........................................................................................................... 36

*Parker v. J.M. Smucker Co.*, No. C 13-0690 SC, 2013 U.S. Dist. LEXIS 120374, N.D. Cal. Aug. 23, 2013) ..................................................................................................................................... 33

*Perez v. B. Braun Medical, Inc.*, No. 17 Civ. 8512 (LLS), 2018 U.S. Dist. LEXIS 79395 (May 9, 2018) ........................................................................................................................................... 10

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc*., 887 F. Supp. 2d 519, 2012 U.S. Dist. LEXIS 114606 (S.D.N.Y. Aug. 14, 2012) ............................................................................................ 20

*Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201 (S.D.N.Y. 2013).............................................. 21

*Podpeskar v. Dannon Co.*, No. 16-cv-7478 (KBF), 2017 U.S. Dist. LEXIS 198948 (S.D.N.Y. Dec. 3, 2017)................................................................................................................................. 7

*Pom Wonderful v. Coca-Cola Co*., 134 S. Ct. 2228 (2014)......................................................... 30

*Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628 (S.D.N.Y. 1999).......................................... 18

*Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533 (S.D.N.Y. 2013)................................................... 25

*Reynolds v. Wal-Mart Stores, Inc.*, No. 4:14cv381, 2015 U.S. Dist. LEXIS 53405, at *13 (N.D. Fla. Apr. 23, 2015) ...................................................................................................................... 29

*Rikos v. P&G*, 782 F. Supp. 2d 522 (S.D. Ohio 2011) ............................................................... 35

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ...................................................................... 4

*Salazar v. Honest Tea, Inc.*, No. 2:13-cv-02318, 2015 U.S. Dist. LEXIS 153397 (E.D. Cal. Nov. 12, 2015) ..................................................................................................................................... 15

*Santiago v. Amdocs, Inc.*, No. C 10-4317, 2011 U.S. Dist. LEXIS 36111 (N.D. Cal. Apr. 2, 2011) ...................................................................................................................................................... 24

*Scholder v. Riviana Foods Inc.*, No. 16-cv-6002, 2017 U.S. Dist. LEXIS 98330 (E.D.N.Y. June 23, 2017) ..................................................................................................................................... 37

*School Dist. v. Lake* Asbestos (*In re Sch. Asbestos Litig.*), 789 F.2d 996 (3d Cir. 1986) ........... 17

*Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029 (NSR), 2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7, 2015).................................................................................................................. 7

*Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG)(RML), 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sep. 14, 2015) .................................................................................................. 28

*Singh v. Queens Ledger Newspaper Grp.*, 2 A.D.3d 703 (2003) .................................................. 9

*Tran v. Sioux Honey Association, Cooperative*, No. 8:17-cv-110, 2018 U.S. Dist. LEXIS 146380 (C.D. Cal. Aug. 20, 2018) ......................................................................................... 2, 16

*United States v. Locke*, 529 U.S. 89 (2000). .............................................................................. 30

*United States v. Philip Morris USA, Inc.*, 686 F.3d 832 (D.C. Cir. 2012) ................................ 35

*United States v. Western Pac. RR Co.*, 352 U.S. 59 (1956) ....................................................... 34

*Walker v. B&G Foods, Inc.*, No. 15-cv-03772 2016 U.S. Dist. LEXIS 15194 (N.D. Cal. Feb. 8, 2016) ...................................................................................................................................... 34

*Wyeth v. Levine*, 555 U.S. 555 (2009) ........................................................................................ 27

*Zeisel v. Diamond Foods, Inc.*, No. C 10-01192, 2010 U.S. Dist. LEXIS 141941, at *7 (N.D. Cal. Sep. 3, 2010) .......................................................................................................... 30

*Zupnik v. Tropicana Prods.*, No. CV 09-6130, 2010 U.S. Dist. LEXIS 142060 (C.D. Cal. Feb. 1, 2010) ............................................................................................................................... 29

*Zurakov v. Register.Com, Inc.*, 304 A.D.2d 176 (N.Y. App. 2003) ........................................... 10

**Statutes**

21 U.S.C. § 343-1 ................................................................................................................. 29, 30

40 C.F.R. § 180.364 .................................................................................................................... 33

Food Drug, and Cosmetic Act, 21 U.S. Code Chap. 9 ............................................................... 28

New York General Business Law § 350-a .................................................................................... 5

New York State GBL § 349 ........................................................................................................... 1

New York State GBL § 350 ........................................................................................................... 1

Pub. L. No. 101–535, § 6, 104 Stat. 2353 ............................................................................. 30, 31

The Nutrition Labeling and Education Act of 1990 .................................................................... 29

**Regulations**

21 C.F.R. § 10.115 ...................................................................................................................... 14

56 Fed. Reg. 60,421 .................................................................................................................... 13

80 Fed. Reg. 69,905-01 ............................................................................................................... 13

82 Fed. Reg. 9339 ....................................................................................................................... 36

## INTRODUCTION

Defendant Ainsworth Pet Nutrition, LLC d/b/a Rachael Ray Nutrish ("Rachael Ray Nutrish"), markets and sells its Super Premium Food for Dogs (the "Products") as "Natural," despite being aware that the Products contain the residue of a synthetic biocide, glyphosate. Plaintiff Markeith Parks seeks to put an end to this practice. Those are the facts alleged, and they are not in dispute here.

The allegations do state valid causes of action—as is well known by Rachael Ray Nutrish, already a defendant in California for allegedly misrepresenting whether the Products are "Natural."[1] New York State consumer-protection law broadly prohibits deceptive marketing or advertising. *See* New York State GBL §§ 349, 350

. Recent studies by respected organizations show that consumers prefer "natural" products because they understand the term to mean "chemical free" and that "no toxic pesticides were used."[2] Other courts have already concluded that advertising a product as "made from 100% natural whole grain oats" can be misleading if those oats are tainted with glyphosate residue, *see Organic Consumers Ass'n v. General Mills, Inc.*, No. 2016 CA 6309 B, 2017 D.C. Super. LEXIS

---

[1] *See Grimm v. APN, Inc.*, No. 17-00356, 2017 U.S. Dist. LEXIS 206700 (C.D. Cal. Nov. 20, 2017).

[2] *See* Complaint ¶¶ 29, 38-39 (citing *Natural Food Labels Survey 2015 Nationally Representative Phone Survey*, Consumer Reports National Research Center (2015), https://www.consumerreports.org/content/dam/cro/magazine-articles/2016/March/Consumer_Reports_Natural_Food_Labels_Survey_2015.pdf; *Organic Food Labels Survey 2014* Nationally *Representative Phone Survey*, Consumer Reports National Research Center (2014), http://greenerchoices.org/wp-content/uploads/2016/08/CR2014OrganicFoodLabelsSurvey.pdf); *see also, e.g., The Intangible Appeal of "Natural": Growing Consumer Interest in an Unregulated Product Label*, Euromonitor International (Nov. 25, 2016), https://blog.euromonitor.com/intangible-appeal-natural-growing-consumer-interest-unregulated-product-label/.

4, at **24-25 (July 6, 2017) ("Defendant's products contain traces of [glyphosate] while representing to be made from 100% natural whole grain oats . . . plainly, a reasonable fact-finder considering the facts as alleged could conclude that consumers have been misled"), and that advertising honey as "pure" may be objectively deceptive if the honey is tainted by glyphosate residue, *see Tran v. Sioux Honey Association, Cooperative*, No. 8:17-cv-110, 2018 U.S. Dist. LEXIS 146380, at **14 (C.D. Cal. Aug. 20, 2018) (holding that reasonable consumers "may interpret the word 'Pure' . . . to mean that the final product does not contain any substance (even in trace amounts) that is not essential to the honey, particularly synthetic substances such as glyphosate"). Rachael Ray Nutrish is seeking to take advantage of consumer preference for "natural" products without actually undertaking the work of producing a natural product. That conduct misleads consumers.

Unable to counter the precedent or simple common sense behind Plaintiff Parks's action, Rachael Ray Nutrish resorts instead to disputing exactly how Parks did, or should, plead the causes of action. But fully half the arguments that Rachael Ray Nutrish raises are legally irrelevant to the sufficiency of the Complaint, and are therefore designed only to confound the real issues, for example:

- Whether the Complaint must specify how much glyphosate is in the purportedly "Natural" pet food.

  This is irrelevant because the question of whether glyphosate is natural or unnatural is not contingent upon the volume of the substance. Either the purportedly "Natural" Products contain residue of an unnatural biocide, or they do not.

- Whether the amount of glyphosate in the pet food is harmful.

  Again, whether a substance is harmful, or how harmful it is, or whether it is bioaccumulative in the digestive tracts of mammals, is irrelevant to whether the substance is natural. The Products are advertised as "Natural," not as "of disputed harm at low levels."

- Whether the pet food Products comply with applicable regulations.

2

Plaintiff Parks does not challenge whether Rachael Ray Nutrish has complied with federal regulations addressing the use of glyphosate. Plaintiff Parks challenges whether Rachael Ray Nutrish has taken Products that it knows contain unnatural residues and labeled them "Natural." By analogy, it is legal to sell foods containing peanut residue. It is not legal to market those foods as "allergen-free."

- Whether the Court may exercise personal jurisdiction over non-resident class members, or whether New York common law can apply to the claims of a nationwide class.

  This is a motion to dismiss. It relates only to the Complaint, and is judged according to whether the named Plaintiff, Markeith Parks, has stated claims as to himself. Plaintiff Parks's motion for class certification will come much further into these proceedings, after discovery on class issues. That is the time to raise all these issues pertaining to which consumers Plaintiff Parks may represent, or what law should apply to their claims—questions irrelevant to the sufficiency of the pleading.

Once those irrelevant points are set aside, Rachael Ray Nutrish's Motion is reduced to just a few arguments that are relevant but ultimately unsuccessful. *First*, Rachael Ray Nutrish argues that consumer protection statutes have not been violated, because no reasonable consumer would believe that "Natural" means that a product does not contain the residue of a synthetic biocide. Plaintiff Parks's allegations are well-pleaded, including reference to published studies indicating that consumers *do* understand "Natural" to mean free from substances like synthetic biocide residue. Rachael Ray Nutrish asserts that no reasonable consumer would behave exactly how these studies show that consumers behave; that assertion is inappropriate for determination on a motion to dismiss, as ample precedent demonstrates.

*Second*, Rachael Ray Nutrish argues that the Complaint does not sufficiently plead material misrepresentation. In this regard, however, Rachael Ray Nutrish confuses adequate pleading (which is the standard a plaintiff must meet) with listing evidence (which is not a standard a plaintiff must meet in his complaint). Evidence is developed during discovery. For purposes of the pleading's sufficiency, it is plain (and Rachael Ray Nutrish does not dispute) that Plaintiff Parks has a fact basis for his claims.

**Third**, Rachael Ray Nutrish argues that the claim for breach of warranty is not sufficiently pleaded because Plaintiff Parks does not provide "evidence" of the claim and does not allege that the Products are **not** natural. But, again, Plaintiff Parks is not required to provide **evidence** in a pleading, and one look at the Complaint shows that he does allege that the Products are not natural, and does have a fact basis for doing so.

**Fourth**, Rachael Ray Nutrish argues that Plaintiff Parks cannot plead unjust enrichment where there is a valid warranty. Rachael Ray Nutrish refuses to concede that it warranted the Products as "Natural." Where the parties disagree over the existence of a warranty, unjust enrichment may be pleaded as an alternative claim. That's hornbook law.

**Finally**, Rachael Ray Nutrish argues that the claims are preempted or should be deferred pursuant to primary jurisdiction. That is a tired argument that many defendants have tried to make in the context of glyphosate residue. The argument has failed elsewhere and fails equally here.

Accordingly, Rachael Ray Nutrish's Motion to Dismiss should be denied.

## <u>ARGUMENT</u>

For purposes of deciding a motion to dismiss, all fact allegations in the complaint must be accepted as true, and all reasonable inferences drawn from those allegations in favor of the plaintiff. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013); *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013). Ignoring this, Rachael Ray Nutrish spends the first part of its Memorandum arguing that Plaintiff Parks's claims fail based on a fact issue for the ultimate trier of fact, *i.e.*, how reasonable consumers understand Rachael Ray Nutrish's representations that the Products are "Natural." (Mem. 4-10.) The second half of Rachael Ray Nutrish's Memorandum even more brazenly disregards the posture of the case and argues that if no class can be certified, then the

Complaint should be dismissed. That is procedural shamanism: Whether a class ultimately will be certified is wholly unrelated to whether a Complaint survives a motion to dismiss. Then Rachael Ray Nutrish throws in an argument that the case should be dismissed on preemption grounds, or stayed based on the doctrine of primary jurisdiction. That is an argument that many defendants have made in the context of glyphosate contamination. The argument has failed when made by other defendants, and there is no reason why it should not also fail here.

## I.    The Claims for Violation of GBL §§ 349 and 350 Are Sufficiently Pleaded.

New York State GBL § 349 makes any deceptive act or practice in commerce illegal. *See* GBL § 349 ("Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."). The statute is of general application:

> General Business Law § 349 prohibits deceptive and misleading business practices and its scope is broad, indeed. General Business Law § 349 "on [its] face appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad . . . . The reach of [General Business Law § 349 provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State."

*Lonner v. Simon Prop. Grp., Inc.*, 57 A.D.3d 100, 109-10 (2008) (quoting *Karlin v IVF Am.*, 690 NYS2d 495 (1999)). A deceptive act or practice is one likely to mislead "a reasonable consumer acting reasonably under the circumstances." *Gotlin v. Lederman*, 483 Fed. App'x. 583, 587-88 (2d Cir. 2012) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995).

New York General Business Law § 350 is also broad, providing: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material

respect." A violation of § 350 likewise tests whether the act or omission would be likely to mislead a reasonable consumer. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015).  Neither section requires a showing of reliance on the false advertising. *Id.* (holding that "neither Section 349 nor 350 require proof of reliance"); *see also O'Neill v. Std. Homeopathic Co.*, No. 16-cv-8687 (KMK), 2018 U.S. Dist. LEXIS 168807, at *32, n.6 (S.D.N.Y. Sept. 28, 2018) (collecting cases). Similarly, neither section requires a showing that the defendant acted intentionally or with scienter. *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409.

Rachael Ray Nutrish argues that the Complaint "fails to allege facts that would show [the Products'] labeling is: (i) materially deceptive and (ii) would deceive a reasonable consumer." (Mem. 4.) But this is not actually a question of how Plaintiff Parks has pleaded the case; the Complaint plainly alleges materiality[3] and conduct that would deceive a reasonable consumer.[4]

---

[3] *E.g.*, ¶¶ 2-3 (alleging that Rachael Ray Nutrish knows that "consumers will pay more for foods for their pets that they believe to be natural" and therefore advertises and promotes the Products as "Natural"); ¶ 9 ("By deceiving consumers about the nature, quality, and/or ingredients of the Products, Rachael Ray Nutrish is able to sell a greater volume of the Products . . . ."); ¶ 12 ("Rachael Ray Nutrish intended for consumers to rely on its representations, and reasonable consumers did in fact so rely."); ¶ 13 (alleging that consumers "paid a premium for the Products based upon [Rachael Ray Nutrish's] misrepresentations that they are 'Natural'"); ¶ 15 ("Rachael Ray Nutrish's labeling and advertising of the Products tends to mislead and is materially deceptive"); ¶ 28 (alleging that Rachael Ray Nutrish knows that "consumers will pay more for pet foods that they believe to be natural than they will pay for pet foods that they do not believe to be natural"); ¶ 77 ("[I]ndependent surveys confirm that consumers will purchase more 'natural' products than conventional products, and will pay more for 'natural' products.").

[4] *E.g.*, ¶ 5 ("No reasonable consumer, seeing these 'Natural' representations, would expect that the Products contain unnatural chemicals."); ¶ 10 ("Consumers lack the scientific knowledge necessary to determine whether the Products are in fact 'Natural' and to know or to ascertain the true ingredients and quality of the Products."); ¶ 11 ("Reasonable consumers must and do rely on Rachael Ray Nutrish to report honestly what the Products contain, and whether the Products are in fact 'Natural'."); ¶ 37 ("Consumers reasonably believe that a product or ingredient represented as 'Natural' does not contain unnatural biocides."); ¶ 39 (citing study indicating that two-thirds of consumers believe a "natural" label means no toxic pesticides were used); ¶ 56 ("No reasonable consumer would expect this controversial and potentially harmful synthetic chemical to be present in 'Natural' dog food."); ¶ 62 ("the Products are not what a reasonable consumer would consider 'Natural' because they in fact contain glyphosate").

Instead, Rachael Ray Nutrish is asking the Court to decide, ***as a matter of law***, that it is not deceptive to market pet food as "Natural" if it contains an ***un***natural biocide. Rachael Ray Nutrish's argument has a fatal initial flaw: Determinations of how a reasonable consumer would interpret a label are inappropriate for a motion to dismiss. Instead, such questions are reserved for the trier of fact. *See, e.g.*, *Eidelman v. The Sun Prods. Corp.*, No. 16-cv-3914 (NSR), 2017 U.S. Dist. LEXIS 156420, at *10 (S.D.N.Y. Sept. 25, 2017) ("Generally, this inquiry is not appropriate on a motion to dismiss."); *Kacocha v. Nestle Purina Petcare Co.*, 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *52 (S.D.N.Y. Aug. 12, 2016) ("ample case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact"); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG) (RML), 2015 U.S. Dist. LEXIS 122186, at *27 (E.D.N.Y. Sept. 14, 2015) ("What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, at *28 (S.D.N.Y. May 7, 2015) ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss."); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 479-80 (S.D.N.Y. 2014) ("Although 'the presence of a disclaimer or other clarifying language ***may*** defeat a claim of deception,' the Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer.").[5]

---

[5] In an effort to overcome this precedent, Rachael Ray Nutrish cites *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), and *Podpeskar v. Dannon Co.*, No. 16-cv-7478 (KBF), 2017 U.S. Dist. LEXIS 198948 (S.D.N.Y. Dec. 3, 2017) (Mem. 5). In *Fink*, the consumer fraud claims were dismissed on the basis that a "plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his

Notwithstanding this precedent, and the procedural posture of this case, Rachael Ray Nutrish argues (1) that even if the Products' marketing is deceptive, that deception could not be "material" for purposes of GBL §§ 349 and 350 and (2) the federal regulatory scheme for glyphosate should protect it from claims of consumer misrepresentation. As set forth below, those arguments do not comport with the law.

### A.      The Complaint Sufficiently Pleads Material Misrepresentation.

Rachael Ray Nutrish argues that "the Complaint does not allege facts regarding the materiality" of the misrepresentation. (Mem. 5.) That is wrong. Without a doubt, Plaintiff Parks properly alleges that the "Natural" misrepresentation was material to him. According to the Complaint:

> 22.      In deciding to make his purchase, Parks saw, relied upon, and reasonably believed Rachael Ray Nutrish's representations that its Products were "Natural."

> 23.      Parks was willing to pay more for Rachael Ray Nutrish's Products because he expected the Products to be free of pesticides and other unnatural chemicals.

> 24.      Had Parks known at the time that Rachael Ray Nutrish's Products contained the unnatural biocide glyphosate, he would not have purchased or continued to purchase Rachael Ray Nutrish's Products.

> 28.      Rachael Ray Nutrish knows that consumers seek out and wish to purchase whole, natural foods for their pets that do not contain artificial chemicals, and that consumers will

---

pleadings." *Fink*, 714 F.3d at 742. The *Podpeskar* plaintiff attempted to allege that a "natural" label was misleading not based on anything actually in the yogurt itself, but instead because "the cows that produced the milk that produced the yogurt, may, at some point, have eaten feed made from corn that was genetically modified, or been raised using hormones and certain milk production methods." *Podpeskar*, 2017 U.S. Dist. LEXIS 198948, at *1. Those claims are not analogous to Plaintiff Parks's. In truth, in order to meet the "heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be mislead" by a product label, the allegedly misleading interpretation must "border on fantasy," *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 U.S. Dist. LEXIS 123824, at *51 (E.D.N.Y. Aug. 29, 2013)—which cannot possibly be said in the context where multiple courts have ***already*** found that Plaintiff Parks's interpretation of "Natural" is plausible when it comes to the presence of glyphosate residue, and consumer studies show the same.

> pay more for pet foods that they believe to be natural than they will pay for pet foods that they do not believe to be natural.

(Compl. ¶¶ 22-24, 28; *see also supra*, footnote 3.) Plaintiff Parks avers consumers will purchase more, or pay more for, products labeled "natural," and that he would not have purchased the Products if he knew the "Natural" representation was false. That suffices to state a claim, whatever arguments Rachael Ray Nutrish might want to make about facts. *See, e.g.*, *Lonner*, 57 A.D.3d at 110-11 (holding that so long as elements of § 349 are *alleged*, complaint survives, whereas *fulfilling* any element is question of fact); *Singh v. Queens Ledger Newspaper Grp.*, 2 A.D.3d 703, 704-05 (2003) (overturning dismissal as improper because "the three elements that are required for a proper pleading were present: (1) labeling is a consumer oriented practice, (2) the label at issue was alleged to have contained incorrect information about the fiber content of the garment, and (3) the plaintiff claimed he was a consumer who purchased the mislabeled garment").

Rachael Ray Nutrish then argues that the Complaint fails to state a claim because it does not "identify[] any particulars as it relates [*sic*] these Products and these purported class members." (Mem. 6.) *First*, the only allegedly missing "particular" that Rachael Ray Nutrish identifies is data on the amount of glyphosate in the Products. But Rachael Ray Nutrish fails to explain why the particular amount of glyphosate in the Products would be relevant here. There is not any dispute that glyphosate is synthetic and *un*natural. (*E.g.*, Compl. ¶ 4.) If glyphosate is in the Products at *any* level, as the Complaint alleges that it is (*e.g.*, Compl. ¶ 6), then the Products cannot be called "Natural." No arguing about the particular level of the synthetic biocide will change that. *See, e.g.*, *Tran*, 2018 U.S. Dist. LEXIS 146380, at **14-15 (holding that reasonable consumer can believe that "the final product does not contain *any* substance (even in trace amounts) that is not essential to the honey, particularly synthetic substances such as glyphosate") (emphasis added).

*Second*, where the elements of a cause of action are alleged, the plaintiff is not required to expand his pleading with "particulars," and the pleading cannot be dismissed for failure to do so. *See, e.g.*, *Zurakov v. Register.Com, Inc.*, 304 A.D.2d 176, 181 (N.Y. App. 2003) ("A record that is inconclusive as to whether a reasonable consumer might be misled precludes summary dismissal . . . ."); *Oswego*, 85 N.Y.2d at 27 (denying judgment as matter of law where record was "inconclusive as to whether a reasonable consumer in plaintiffs' circumstances might have been misled"). *Third*, in any event, the sufficiency of a complaint is tested with regard to the named plaintiff, not with regard to absent class members. *See, e.g.*, *Hardy v. Fischer*, 701 F. Supp. 2d 605, 611 n.5 (S.D.N.Y. 2010) ("the allegations of at least one named plaintiff must state a claim for relief"); *Hall Special Situations Inv. Fund v. Basix Corp.*, No. 91 Civ. 1202 (CSH), 1994 U.S. Dist. LEXIS 4653, at *4 (S.D.N.Y. Apr. 14, 1994) (noting that dismissal is appropriate "[w]here the named plaintiff in a class action suit fails to state a claim upon which relief could be granted"). As shown above, the materiality of the misrepresentation to Plaintiff Parks undoubtedly has been alleged.

For its mistaken argument regarding sufficiency of the pleading, Rachael Ray Nutrish relies solely upon this Court's opinion in *Perez v. B. Braun Medical, Inc.*, No. 17 Civ. 8512 (LLS), 2018 U.S. Dist. LEXIS 79395 (May 9, 2018) (Mem. 5-6). That reliance is misplaced, as the Court will recognize. The plaintiff in *Perez*, a personal-injury case based on the possibility (but not actuality) that a blood-clot filter could fail, alleged 11 counts of action, premised mostly on strict product liability. *See id.* at **7-8. The Court dismissed that personal-injury case on the basis that no injury had occurred. As part of that dismissal, the Court noted that an add-on claim under § 349 or § 350 "fail[ed] to show what materially misleading representations defendants made":

> That there are side effects associated with IVC filters that are implanted long-term, does not mean that Perez's IVC filter has not been effective for implantation into the IVC to prevent PE and DVT for which it was designed or that it is not safer than the alternative. The complaint does not allege that Perez's IVC filter is not effective at performing its intended function or is not performing the way defendants stated it would before she purchased it.

*Id.* at **17-18. The case before the Court now is not a personal-injury action, and based on the Complaint, there is no possibility that the Products are performing as advertised: The Products were represented as "Natural" but they contain a synthetic, unnatural biocide. The pleading, therefore, suffices.

### B.       The "Regulatory Landscape" Does Not Protect Deceptive Marketing.

Rachael Ray Nutrish next argues that Plaintiff Parks cannot bring a claim premised on deceptive marketing because (1) "the Products are in compliance with all relevant regulations and no allegation suggests otherwise," and (2) by alleging that a reasonable consumer would not expect a "Natural" product to contain a synthetic biocide, Plaintiff Parks "would require 'natural' products to meet a standard that was more strenuous than the most restrictive federal labeling requirements." (Mem. 7.) Rachael Ray Nutrish's argument suffers five flaws, any of which alone is fatal:

### 1.       Compliance With Federal Regulations on Pesticide Residue Is Irrelevant to Compliance With State Consumer-Protection Standards.

Compliance with federal regulations on pesticide labeling is irrelevant, because Rachael Ray Nutrish went beyond what federal regulations govern or allow when it chose to market the Products as "Natural." When a manufacturer does not merely comply with federal regulations but also chooses to add marketing representations, that manufacturer must still ensure that the

representations are accurate and not misleading (or be liable to consumers).[6] For example, in *In re: Simply Orange Orange Juice Marketing & Sales Practices Litigation*, MDL No. 2361, 2013 U.S. Dist. LEXIS 28080 (W.D. Mo. Mar. 1, 2013), the plaintiffs alleged that Coca-Cola Company was advertising orange juice products as "natural" even though the products were processed, above levels of "incidental additives," with orange oil, orange essence, and other volatile and chemically engineered compounds. Coca-Cola Company argued that it enjoyed a safe-harbor defense through compliance with applicable regulations—an argument the court rejected on the basis that the claims either sought to impose requirements identical to federal law (truth in advertising) or else "cover[ed] matters not directly within the scope of those laws." 2013 U.S. Dist. LEXIS 28080, at **8-10. Such is also the case here, where Rachael Ray Nutrish chose to exceed federal label requirements and add the marketing term "Natural" to the Products. Plaintiff Parks has not pleaded whether the glyphosate levels in the Products comply with federal regulations because that detail is simply irrelevant.[7]

**2.      The FDA Does Not Provide Guidance on Whether "Natural" Can Be Used to Describe Products That Contain a Synthetic Biocide.**

The FDA's failure to provide guidance on pesticide use in "natural" products supports, and does not undermine, Plaintiff Parks's claim. Rachael Ray Nutrish claims that, in 2015, the FDA

---

[6] Federal regulations require that such additional label representations be truthful. 21 U.S.C. § 343(a)(1). Compliance with other regulations does not insulate Rachael Ray Nutrish from violation of this requirement. *See infra*, Section VI.

[7] Rachael Ray Nutrish tries to detract from the real issue by suggesting that Plaintiff Parks is trying to impose a new standard of affirmative disclosure of glyphosate residue. (Mem. 7.) Nowhere does the Complaint suggest a requirement of affirmative disclosure. Instead, Plaintiff Parks alleges, consistent with other cases and decisions, that labeling a product "natural," to the average reasonable consumer, suggests that the product does not contain an unnatural biocide. *Cf.* 58 Fed. Reg. 2462 (stating to the extent a state requirement is identical to the standard of identity of federal law, state requirements are not subject to preemption).

"clarified its longstanding position had been to define the term ['natural'] in a manner that excluded food production methods, including the use of pesticides and herbicides." (Mem. 7 (quoting 80 Fed. Reg. 69,905-01 (Nov. 12, 2015)).) According to Rachael Ray Nutrish, this means that no reasonable consumer can believe that "Natural" means that a product is free from a synthetic biocide. (Mem. 7-8.) Rachael Ray Nutrish's argument is cherry-picked to take a quotation out of context. What the FDA statement actually was doing was describing shortcomings that had led to the FDA's current request for information and comments:

> When we established our policy concerning the use of the term "natural," as described previously in this document, it was not intended to address food production methods, such as the use of genetic engineering or other forms of genetic modification, the use of pesticides, or the use of specific animal husbandry practices, nor did it explicitly address food processing or manufacturing methods, such as thermal technologies, pasteurization, or irradiation. Furthermore, we did not consider whether the term "natural" should describe any nutritional or other health benefit.

80 Fed. Reg. 69,905-01.[8] Based on these shortcomings in federal definition, the FDA "invite[d] interested persons to comment on the use of the term 'natural' in the labeling of human food products, including when, if ever, the use of the term is false or misleading (FDA-2014-N-1207)." *Id.* The FDA stated that it was seeking comments precisely because it "believed that defining the term 'natural' could remove some of the ambiguity surrounding use of the term that results in misleading claims." 80 Fed. Reg. 69,905-01 (citing 56 Fed. Reg. 60,421, at 60,466). That is, the FDA *recognized* that it had failed to address pesticide use in defining "natural," and then requested comment on whether it should include pesticide use going forward, specifically indicating that

---

[8] The parties' use of "pesticides" in this context may be confusing. Glyphosate actually is an herbicide (plant killer), *see* https://www.epa.gov/ingredients-used-pesticide-products/glyphosate (last visited Nov. 14, 2018) (describing glyphosate), or, more technically, a biocide, because it also kills non-plant microorganisms. Nevertheless, the EPA and federal regulations consider glyphosate as a pesticide.

pesticide use may be of interest to consumers trying to decode what "natural" means.[9] It is impossible to fathom how Rachael Ray Nutrish leaps, without citation, from the FDA's inquiry to a declaration that a consumer couldn't plausibly think "natural" addresses pesticides. (And in an incongruous twist, Rachael Ray Nutrish subsequently concedes that "calling a product 'natural' is not subject to any [federal] regulations at all" (Mem. 9), much less subject to a specific FDA definition.) *Cf. Holk v. Snapple Bev. Corp.*, 575 F.3d 329, 340 (3d Cir. 2009) ("We conclude that the FDA's policy statement regarding use of the term 'natural' is not entitled to preemptive effect."); *In re Frito-Lay N.A., Inc. All Nat. Litig.*, 2013 U.S. Dist. LEXIS 123824, at *32-33 (E.D.N.Y. Aug. 29, 2013) (same); *see also* 21 C.F.R. § 10.115(d)(1) ("Guidance documents do not establish legally enforceable rights or responsibilities. They do not legally bind the public or FDA.").

### 3.    A "Reasonable Consumer" Is Not Presumed to Understand Pesticide Residue Allowances.

Rachael Ray Nutrish declares "the Products are in compliance with all federal regulations involving food labeling, ***which informs a reasonable consumer's beliefs***." (Mem. 7 (emphasis added).) Rachael Ray Nutrish cites no authority for the sweeping proposition that a reasonable consumer, deciding among pet food brands on the store shelf, is versed in federal pesticide residue allowances. The argument borders on absurd: Rachael Ray Nutrish first asserts that it is implausible that reasonable consumers would interpret the word "natural" exactly the way consumer polling shows they actually do. *See* Compl. ¶¶ 29, 39 (citing consumer polling). Then Rachael Ray Nutrish asserts, without any support, that the average reasonable consumer is actually

---

[9] The FDA did receive comments but has not yet taken any action to further define "natural." *See infra*.

presumed to understand technical requirements of federal labeling schemes.[10] Even if a reasonable consumer were charged with such understanding, this would not be inconsistent with assuming that a product affirmatively labeled "Natural" meets some standard higher than mere adherence with pesticide residue maximums.

### 4. Plaintiff Is Not Seeking Any Requirement "More Strenuous" Than Federal Law.

Requiring truthfulness in labeling does not create a standard "more strenuous" than labeling requirements. Rachael Ray Nutrish is under no obligation to call the Products "Natural"—which it does for marketing purposes, because it knows consumers favor such products, *see, e.g.*, Compl. ¶ 28—but if it chooses to use a "Natural" label, then it must be truthful. This is entirely consistent with federal law. *See* 21 U.S.C. § 343(a)(1) (declaring product misbranded and unlawful if "its labeling is false or misleading in any particular"). Rachael Ray Nutrish's reliance on *In re General Mills Glyphosate Litigation*, No. 16-2869, 2017 U.S. Dist. LEXIS 108469 (D. Minn. July 12, 2017) (Mem. 8-9), is misplaced.[11] Courts have held that, when a manufacturer places some extra word like "pure" or "natural" on a label, it ***does*** raise reasonable consumer expectations with

---

[10] *Cf. In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, MDL No. 2705, 2018 U.S. Dist. LEXIS 187031, at **22-23 (N.D. Ill. Nov. 1, 2018) ("There is no reason to believe that either the patent or the Department of Agriculture report would be familiar to a reasonable consumer with an ordinary understanding of how dairy products generally fare when unrefrigerated."); *Salazar v. Honest Tea, Inc.*, No. 2:13-cv-02318, 2015 U.S. Dist. LEXIS 153397, at **15-17 (E.D. Cal. Nov. 12, 2015) (rejecting argument that consumer must be aware of FDA requirements in order to state claim premised on violation of those requirements, as plaintiff is required only to "connect the dots showing how the alleged misbranding misled [the plaintiff] in a way that a reasonable consumer would be deceived" (internal quotes omitted).).

[11] The *General Mills* decision that Rachael Ray Nutrish cites focused on a representation about just one ingredient, i.e., that the granola bars were "Made with 100% Natural Whole Grain Oats," not that the eventual finished product, with all its ingredients, was "natural." *See In re General Mills*, 2017 U.S. Dist. LEXIS 108469, at **5-6. *OCA v. GM*, *infra*, which focused also on representations about the finished product (like those representations that Rachael Ray Nutrish makes), reached a different conclusion.

regard to glyphosate. In *Tran v. Sioux Honey*, for example, a California federal court held that the words "pure" or "100% pure" could lead consumers to believe that the honey would not be contaminated with glyphosate: "Reasonable consumers . . . may interpret the word 'Pure' (and particularly, '100% Pure') to mean that the final product does not contain any substance (even in trace amounts) that is not essential to the honey, particularly synthetic substances such as glyphosate." *Tran v. Sioux Honey*, No. 8:17-cv-110, 2018 U.S. Dist. LEXIS 146380, **14-15. In *Organic Consumers Ass'n v. General Mills, Inc.* ("*OCA v. GM*"), glyphosate was found in granola bars labeled "natural" and "made with 100% Natural Whole Grain Oats." The D.C. court found that the plaintiff "pleaded facts that could lead a reasonable finder of fact to conclude that consumers would be misled by the defendant's packaging." *OCA v. GM*, Case No. 2016 CA 6309 B, 2017 D.C. Super. LEXIS 4, at *25 (July 7, 2017).

### 5. Federal Organic Standards Do Not Inform What "Natural" Means to Reasonable Consumers.

Rachael Ray Nutrish also contends that, because federal *organic* standards allow some herbicide residue, consumers cannot expect this "natural" product to be free from residue. (Mem. 8-9.) Rachael Ray Nutrish's support for this argument is limited to *In re General Mills Glyphosate Litigation*, described *supra*. Reality suggests significant consumer confusion between what "natural" and "organic" mean, and which standard is more stringent. *See, e.g.*, *In re Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *45 ("In the notice of proposed rulemaking, the FTC commented that it was 'seriously concerned with the ability of consumers to understand these terms' 'natural' and 'organic,' 'which are used in a wide variety of confusing and conflicting contexts.' 39 Fed. Reg. 39,849."). The properly pleaded (and supported) allegation in this case is that, in a 2014 Consumer Reports National Research Center national survey, two-thirds of consumers equated "natural" with "*no* toxic pesticides were used." (Compl. ¶¶ 38-39 (emphasis

added).) Rachael Ray Nutrish knows that it is taking advantage of this confusion, and of consumer expectations, when it labels the Products "Natural."

## III.   The Claims for Breach of Warranty and for Unjust Enrichment Are Properly Pleaded.

Plaintiff Parks's claims for breach of warranty and unjust enrichment plead every requirement for those claims, which is all that is necessary to survive a motion to dismiss. Rachael Ray Nutrish, searching for a shortcoming, laments that the Complaint "fail[s] to specify under which state's laws the claims for breach of express warranty (Count III) and unjust enrichment (Count IV) are brought." (Mem. 10 n.1.) That is a red herring. The sufficiency of a pleading is tested against the named plaintiff's claims, *see supra*, and Plaintiff Parks's claims plainly arise under New York law. *See, e.g.*, Compl. ¶ 21 (alleging that Plaintiff is resident of Bronx County, New York, who purchased Products at BJ's Wholesale Club in Bronx). The questions of variation in state laws arise at the time of class certification, when Plaintiff Parks will be afforded the chance to argue whether variations in state law, if they exist, are material or immaterial. *See Catholic Health Care West v. US Foodserv.* (*In re US FoodServ. Pricing Litig.*), 729 F.3d 108, 127 (2d Cir. 2013) ("Thus, the crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues. . . . Here, they do not.").[12] Accordingly, the sufficiency of the pleading is tested under New York law, and as set forth herein, each claim survives easily.

---

[12] *See also, e.g.*, *Johnson v. Nextel Communs. Inc.*, 780 F.3d 128, 140-141 (2d Cir. 2015) ("When claims in a class action arise under state law—and the class comprises multiple states— the court must consider whether different state laws will apply to different members of the class. The application of multiple states' laws does not in and of itself preclude class certification."); *School Dist. v. Lake* Asbestos (*In re Sch. Asbestos Litig.*), 789 F.2d 996, 1010 (3d Cir. 1986) ("To meet the problem of diversity in applicable state law, class plaintiffs have undertaken an extensive analysis of the variances in products liability among the jurisdictions. That review separates the law into four categories. Even assuming additional permutations and

### A.    Plaintiff Properly States a Claim for Breach of Warranty.

Rachael Ray Nutrish correctly states the elements of a claim for breach of warranty (Mem. 10):

    (i)      a material statement amounting to a warranty;

    (ii)     the buyer's reliance on this warranty as a basis for the contract with his immediate seller;

    (iii)    the breach of this warranty; and

    (iv)    injury to the buyer caused by the breach.

*Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-313 (1)(a)); *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999); *CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1003 (N.Y. 1990). Rachael Ray Nutrish does not bother, however, to quote the Complaint, instead giving its own interpretation of what Plaintiff Parks "argues." (Mem. 10.)[13] The Complaint actually states:

    124.    Rachael Ray Nutrish provided Plaintiff and other members of the Class and New York Sub-Class with written express warranties including, but not limited to, warranties that its Products are "Natural."

    125.    These affirmations of fact or promises by Rachael Ray Nutrish relate to the goods and became part of the basis of the bargain.

    126.    Plaintiff and members of the Class and New York Sub-Class purchased Rachael Ray Nutrish's Product believing them to conform to the express warranties.

    127.    Rachael Ray Nutrish breached these warranties. This breach resulted in damages to Plaintiff and other members of the Class and New York Sub-Class, who bought Rachael Ray Nutrish's Products but did not receive the goods as warranted.

    [ . . . ]

---

combinations, plaintiffs have made a creditable showing, which apparently satisfied the district court, that class certification does not present insuperable obstacles.").

[13] According to Rachael Ray Nutrish, "Plaintiff *argues* that the term 'natural' was an affirmation by Defendant as to the Products." (Mem. 10 (emphasis added).) This is part of a misconception that pervades Rachael Ray Nutrish's contentions about the sufficiency of the Complaint: A pleading does not, and should not, *argue* anything. The role of the pleading is to state the fact allegations that underlie a cause of action. Plaintiff Parks has stated the requisite allegations, has provided sufficient detail, and now deserves the opportunity to pursue his claim.

129.    . . . [H]ad Plaintiff and the Class and New York Sub-Class members known the true facts, they would not have purchased Rachael Ray Nutrish's Products, or would have purchased Rachael Ray Nutrish's Products on different terms.

(Compl. ¶¶ 124-29.) Parks has pleaded a material statement (*id.* ¶¶ 125, 129), reliance (*id.* ¶ 125), breach (¶ 127), and injury caused (¶ 127). No element of the claim is absent. Moreover, the facts in the Complaint specifically describe the "Natural" warranty (*e.g.*, *id.* ¶¶ 3, 30-32) and the grounds for Plaintiff's reliance (*e.g.*, *id.* ¶¶ 10-11). Plaintiff Parks, therefore, has stated a claim for breach of warranty.

Rachael Ray Nutrish, however, argues that "Plaintiff provides no evidence that consumers did not receive a natural pork product. Indeed, Plaintiff does not allege that any of the underlying ingredients are not 'natural' or that the Products themselves are not 'natural'." This is wrong, on many levels. To begin, Plaintiff Parks is not required to provide "evidence that consumers did not receive a natural pork product." This is a motion to dismiss, and the allegations of the complaint are taken as true, as Plaintiff Parks has not yet even had the opportunity to develop the evidentiary record. *See, e.g.*, *Hannah v. Metro-North C. R. Co.*, 753 F. Supp. 1169, 1178 (S.D.N.Y. 1990) ("While plaintiffs are required to provide evidence of facts supporting their claims to survive a summary judgment motion, it is axiomatic that to survive a motion to dismiss such evidence is neither required nor properly considered under Fed. R. Civ. P. 15(a) or 12(b)(6)") (citing *Festa v. Local 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)).

As to Rachael Ray Nutrish's declaration that Plaintiff "does not allege . . . that the Products themselves are not 'natural'" (Mem. 10), one look at the Complaint shows that not to be correct. (*E.g.*, Compl. ¶ 4 ("The Products at issue are not 'Natural'."); ¶ 34 ("Representing that a product is 'Natural' is a false statement of fact."); ¶ 41 ("Rachael Ray Nutrish's representations that the Products are 'Natural' are false."); ¶ 42 ("The Products are thus not 'Natural' . . . .").) And as to Rachael Ray Nutrish's contention that it is implausible to believe that a reasonable consumer

would believe "Natural" to mean that the Products are free from glyphosate (Mem. 10-11), the Complaint itself cites a 2014 study indicating that roughly two-thirds of consumers *do* believe exactly that. (Compl. ¶ 39.)

Finally, Rachael Ray Nutrish's only legal support for its argument, yet again, is *In re General Mills Glyphosate Litigation*, and yet again Rachael Ray Nutrish glosses over differences between the cases. The court there rested upon the statement that the granola bars were "made with" natural oats, which was not incompatible with the finished product containing glyphosate. *See In re Gen. Mills Glyphosate Litig.*, 2017 U.S. Dist. LEXIS 108469, at * *16-17. In this case, Rachael Ray Nutrish represents its *entire* Product as "Natural," such that the presence of an unnatural substance in *any* portion of the Products renders the representation false. It cannot possibly be said that every ingredient in the Products is "Natural" when at least one ingredient has contaminated the finished Product with a synthetic biocide. *See, e.g.*, *OCA v. GM*, 2017 D.C. Super. LEXIS 4, at *25 (reaching opposite conclusion as *In re General Mills* when considering representations about entire product).

The Complaint sufficiently pleads the elements of a claim for breach of warranty. At this stage of litigation, the inquiry ends there.

**B.    Plaintiff Properly States a Claim for Unjust Enrichment.**

The elements of a claim for unjust enrichment are that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 436 (S.D.N.Y. 2012) (quoting *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 2012 U.S. Dist. LEXIS 114606, at *62-63 (S.D.N.Y. Aug. 14, 2012); *Briarpatch,*

*Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). Plaintiff Parks's Complaint pleads:

> 134.   . . . Rachael Ray Nutrish was enriched at the expense of Plaintiff and the other members of the Class and New York Sub-Class through the payment of the purchase price, or for the payment of a price higher than otherwise would have been paid, for Rachael Ray Nutrish's Products.

> 135.   Under the circumstances, it would be against equity and good conscience to permit Rachael Ray Nutrish to retain the ill-gotten benefits that it received from Plaintiff and the other members of the Class and New York Sub-Class . . . .

(Compl. ¶¶ 134-35.) The elements of the cause of action, therefore, are properly pleaded, which Rachael Ray Nutrish does not dispute.

Instead, Rachael Ray Nutrish argues that the claim for unjust enrichment must be dismissed because Plaintiff Parks asserts the existence of a valid contract, in the form of the warranty provided for the Products. (Compl. ¶¶ 11-12.) The rule in New York, however, is that if "the parties dispute the existence of a contract," then the plaintiff is entitled to pursue unjust enrichment claims in the alternative to the contract-based claim. *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 216 (S.D.N.Y. 2013); *see also, e.g.*, *JTH Tax, Inc. v. Gouneh*, 721 F. Supp. 2d 132, 139 (N.D.N.Y. 2010); *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195-96 (S.D.N.Y. 2009). Rachael Ray Nutrish disputes the existence of a contract and will not admit that it warranted the Products: "But even ***assuming*** Defendant warranted that the Products were 'natural' . . . ." (Mem. 10 (emphasis added); *see also, e.g.*, Mem. 2 ("Even assuming 'natural' can be described as a warranty . . . .").) Until the warranty issue is resolved, Plaintiff Parks is entitled to proceed on his claim for unjust enrichment as well. *See, e.g.*, *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991) ("At this stage of the proceedings, Plaintiffs' unjust enrichment claim cannot be dismissed on what is basically a factual issue.").

**IV.    Rachael Ray Nutrish's Argument About "Threat of Future Injury" Does Not Comport With New York Law.**

Rachael Ray Nutrish moves to "dismiss" Plaintiff Parks's request for injunctive relief. This request, from a procedural standpoint, is utterly improper. Injunction as a form of relief is not subject to a motion to dismiss in its own right. The "suitability of awarding permanent injunctive relief on plaintiffs' claims is not properly taken up at the motion-to-dismiss stage." *Manier v. L'Oreal U.S.A., Inc.* (*In re Amla Litig.*), Nos. 16-cv-6593, 17-cv-111, 2017 U.S. Dist. LEXIS 116139, *53 (S.D.N.Y. July 17, 2001). Instead, the request for injunctive relief must stand or fall with the underlying causes of action. *See Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474, 2015 U.S. Dist. LEXIS 70976, at **15-16 (S.D.N.Y. June 2, 2015) (rejecting defendants' arguments that plaintiff's request for injunctive relief should be dismissed for failure to plead absence of adequate remedy at law and irreparable harm); *see also Marino v. Northwestern Mut. Life Ins. Co.*, No. 00 Civ. 3212, 2001 U.S. Dist. LEXIS 2670, at *3 (S.D.N.Y. Mar. 14, 2001) ("a request for permanent injunctive relief should not be dismissed at the pleading stage unless the underlying claim upon which relief is sought is dismissed"). This rule has been applied specifically in the context of class actions. *See, e.g., Bell v. 3M Co.*, Nos. 16-cv-02351, 16-cv-02394, 16-cv-02352, 2018 U.S. Dist. LEXIS 163609, *35 (D. Colo. Sept. 25, 2018) ("the fact that the remedy pursued in such claims makes them inappropriate for class certification does not invalidate the claims at the motion to dismiss phase"). Therefore, Rachael Ray Nutrish's request to "dismiss" the prayer for injunctive relief must be denied. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 682 (S.D.N.Y. 1997) (explaining why such request is improper).

Even if Rachael Ray Nutrish's request were procedurally proper (it is not), Rachael Ray Nutrish is mistaken about whether Plaintiff Parks may request injunctive relief. According to Rachael Ray Nutrish, there is no threat of harm because "Plaintiff has not pleaded any facts that

he or the proposed class members will continue to purchase the Products." (Mem. 12.) To the contrary, the Complaint alleges that Rachael Ray Nutrish continues to sell the Products with a misrepresentation (*e.g.*, Compl. ¶ 15 (seeking injunction "to halt Rachel Ray Nutrish's false marketing and sale of the Products")) and that consumers still have no means for discovering the falsehood (*id.* ¶ 60)), which is concealed by Rachael Ray Nutrish (*id.* ¶ 67), putting consumers at risk of continuing harm (*id.* ¶ 79). Plaintiff Parks himself alleges that he will buy the Products again if Rachael Ray Nutrish reformulates them to make the label representations true. (*Id.* ¶ 25.)[14] Rachael Ray Nutrish tries to dismiss Plaintiff Parks's allegation as "speculative"—ignoring the precedent that, in the context of evaluating a motion to dismiss, those allegations suffice. *See, e.g.*, *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 500 (E.D.N.Y. 2017) ("Because defendant continues to sell a version of the 'flushable' wipes almost identical in construction and effect to the ones purchased by plaintiff, injunctive relief is appropriate."); *In re Amla Litig.*, 2017 U.S. Dist. LEXIS 116139, at *54 (denying motion to dismiss where plaintiffs had "already been exposed to the Product and thus made aware of alleged defects and misrepresentations regarding it" because, at pleadings stage of proceedings, defendants could not "establish[] that no form of injunctive relief will redress their alleged injuries").

## V. Rachael Ray Nutrish Cannot Hide Behind Alleged "Procedural Flaws" That Relate Only to Class Certification, Not to the Sufficiency of the Pleading.

The second half of the Memorandum in Support of Motion to Dismiss is dominated by an argument about purported "procedural flaws" that Rachael Ray Nutrish surely must know is inappropriate on a motion to dismiss. That is, the Memorandum contends that only the New York

---

[14] Thus distinguishable is Rachael Ray Nutrish's only authority, *Dacorta v. AM Retail Group, Inc.* (Mem. 13), in which the plaintiff failed to "allege that she will purchase any Bass products in the future, let alone from their outlet stores where the alleged unfair marketing practices occurred." No. 16-CV-01748, 2018 U.S. Dist. LEXIS 10733, at *9 (S.D.N.Y. Jan. 23, 2018).

Sub-Class may be certified, and not the nationwide Class, because (1) Plaintiff Parks cannot represent Class members whose claims do not arise in New York State (Mem. 13-17), and (2) it would be improper to apply New York law to the claims of out-of-state Class members (*id.* 17-19). First of all, nowhere does the Complaint request the application of New York law to out-of-state plaintiffs (*see supra*, Part III)—multi-state class actions frequently apply the laws of various states, *see, e.g.*, *In re US FoodServ. Pricing Litig.*, 729 F.3d at 127—rendering the second part of Rachael Ray Nutrish's argument nonsensical. But just as importantly, a ***pleading*** cannot be dismissed in ***anticipation*** of a class-certification decision that occurs much, much later in the litigation, following class discovery; even if no class is certified, the case will continue as an individual action.

In short, Rachael Ray Nutrish's arguments go not to the sufficiency of the Complaint, but to whether a class can be certified, and if so, what form that class should take. On a motion to dismiss, before discovery has begun, the only arguments that are appropriate are those related to the individual named plaintiff and his/her claims. *See, e.g.*, *Santiago v. Amdocs, Inc.*, No. C 10-4317, 2011 U.S. Dist. LEXIS 36111, *6 (N.D. Cal. Apr. 2, 2011) ("Defendant's objections to the class definition do not raise questions about the sufficiency of the pleadings, but rather about whether a class can be certified in this case."); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 948 (N.D. Ohio 2009) ("Whirlpool's argument is that even if their individual OCSPA claims are viable, the Ohio Plaintiffs cannot maintain those claims as a class action. [] Thus, even if Whirlpool's legal argument were sound, it would not support dismissal of the Ohio Plaintiffs' OCSPA claims.").

When this litigation reaches the class certification stage, the Court will consider whether Plaintiff Parks can represent out-of-state plaintiffs (Mem. 13-17), or whether New York law will

apply to the nationwide class (*id.* 17-19).[15] Those are ***not*** decisions that are germane to a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *In re Frito-Lay N. Am. All. Nat. Litig.*, No 12-MD-2413, 2013 U.S. Dist. LEXIS 123824, at *42 (E.D.N.Y. Aug 29, 2013) (holding that where named plaintiffs themselves have Article III standing, question about representation of unnamed class members must "is a question the Court will consider on a Rule 23 certification motion") (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013) (reserving decision on representation of absent class members); *Koh v. S.C. Johnson & Son, Inc.*, 2010 U.S. Dist. LEXIS 654, at *7 (N.D. Cal. Jan. 5, 2010) (same).

The appropriate course is deferral of issues pertaining to class definition, application of state law, or representation by the named plaintiff until the class certification proceedings. *See, e.g.*, *Cannon v. Ashburn Corp.*, No. 16-1452, 2016 U.S. Dist. LEXIS 169040, **30-31 (D.N.J. Dec. 7, 2017) ("Defendants, however, may raise these challenges and others, if appropriate, at the class certification stage."); *DeLuca v. NWC Warranty Corp.*, No. 11-3768, 2013 U.S. Dist. LEXIS 195881, *12 (E.D. Ore. July 22, 2013) (holding that motion to dismiss on ground that plaintiff cannot sustain class action is premature; "we will consider the defendants' arguments if and when they oppose DeLuca's motion for class certification"); *In re Jamster Mktg. Litig.*, MDL No. 1751, 2009 U.S. Dist. LEXIS 43592, **21-22 (S.D. Cal. May 22, 2009) ("Even though the

---

[15] The adage that class issues should be deferred until the class-certification stage has been applied specifically to the context of claims brought under the laws of various states. *In re Buspirone Patent & Antitrust Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) ("Moreover, when a class action raises common issues of conduct that would establish liability under a number of different States' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute." (citing *Maywalt v. Parker & Parsley Petro. Co.*, 147 F.R.D. 51, 58 (S.D.N.Y. 1993); *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39, 41 (E.D.N.Y. 1991)).

arguments of AT&T may ultimately prove persuasive, the court declines to address issues of class certification at the present time. Piece-meal resolution of issues related to the prerequisites for maintaining a class action do not serve the best interests of the court or parties."); *Ehrhart v. Synthes (USA)*, Civil Action No. 07-01237, 2007 U.S. Dist. LEXIS 94760, at *13 (D.N.J. Dec. 21, 2007) ("dismissal of class allegations at this stage should be done rarely . . . the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery'") (quoting *Gutierrez v. Johnson & Johnson, Inc.*, No. 01-5302, 2002 U.S. Dist. LEXIS 15418, at *16 (D.N.J. 2002)); *Jabo's Pharm., Inc. v. Becton Dickinson & Co.* (*In re Hypodermic Prods. Antitrust Litig.*), 2007 U.S. Dist. LEXIS 47438, *57-58 (D.N.J. June 29, 2007) ("the Court will defer its consideration of this argument until after class certification issues have been resolved") (citing, *inter alia*, *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 (2003) (declining to address defendant's argument that plaintiff has no standing to assert claims on behalf of class members, reasoning that such issue "would not arise but for Clark's capacity as a putative class representative").[16]

Therefore, Plaintiff Parks respectfully requests that the Court defer ruling on issues pertaining to the claims of out-of-state Class members until the Court is considering whether the certify the proposed Class and Sub-Class.

## VI. The Claims Are Neither Preempted Nor Subject to the Doctrine of Primary Jurisdiction.

Rachael Ray Nutrish next argues that Plaintiff Parks's claims are "preempted by federal legislation and regulations." The entire argument begins with a misconception, *i.e.*, that according

---

[16] *See also Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2018 U.S. Dist. LEXIS 167345, **7-8 (S.D. Ohio Sept. 28, 2018); *Hazlin v. Botanical Labs., Inc.*, No. 13cv0618, 2013 U.S. Dist. LEXIS 143663, **13-14 (S.D. Cal. Aug. 8, 2013).

to Plaintiff Parks, Rachael Ray Nutrish "was required under state law to disclose any alleged presence of glyphosate." (Mem. 20.) That is nonsense, as Rachael Ray Nutrish well knows. Nowhere does Plaintiff Parks contend that Rachael Ray Nutrish has an affirmative obligation, absent any other representations, to disclose the presence of glyphosate in the Products. Instead, as the Complaint makes clear, Rachael Ray Nutrish's cannot both (1) call the Products "Natural" *and* (2) fail to disclose the presence of a synthetic biocide like glyphosate. (Compl. ¶ 5 ("No reasonable consumer, seeing these 'Natural' representations, would expect that the Products contain unnatural chemicals."); *see also, e.g., id.* ¶¶ 4, 7, 11, 29, 30-31.) Had Rachael Ray Nutrish not chosen to call the Products "Natural" in order to create consumer expectations and sell more (*see id.* ¶¶ 2-3, 12, 28-30, 38-39), it could simply have complied with federal disclosure requirements and stopped there. Nevertheless, Rachael Ray Nutrish recasts the entire Complaint as relying on an affirmative obligation to disclose glyphosate residue, and from that improper recasting, argues that federal law preempts the claims. In the alternative, Rachael Ray Nutrish urges the Court to stay the claims in deference to "pending guidance from the FDA." (Mem. 25.) Rachael Ray Nutrish, however, does not contend that any such "guidance from the FDA" has been requested or is forthcoming—nothing suggests that it is—or how, under these circumstances, the stay would not be impermissibly indefinite.

### A.   Plaintiff Parks's Claims Are Not Preempted by Federal Law.

There is a strong presumption against the preemption of state law claims. *See Wyeth v. Levine*, 555 U.S. 555, 575 (2009); *New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009). "In areas of traditional state regulation, [a court must] assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005). Thus, "we start with the

assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth*, 555 U.S. at 565. A defendant who wishes to avoid liability under state law by invoking preemption "bear[s] the considerable burden of overcoming this starting presumption that Congress does not intend to supplant state law." *Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997) (internal quotation marks omitted).

To begin, the presumption against preemption cannot possibly be overcome where the claims are consistent with federal law. The Complaint alleges that Rachael Ray Nutrish's labels are false and misleading because they represent that the Products are "Natural" when they contain glyphosate, a synthetic biocide. (Compl. ¶ 2.) The claims, therefore, are entirely consistent with the federal Food Drug, and Cosmetic Act, 21 U.S. Code Chap. 9 (Mem. 20), which provides that a product is misbranded and unlawful if "its labeling is false or misleading in any particular," 21 U.S.C. § 343(a)(1).[17] *See, e.g.*, *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 U.S. Dist. LEXIS 122186, at *4 (E.D.N.Y. Sept. 14, 2015) (rejecting preemption argument on "natural" food labels, because claims sought to impose requirements consistent with federal law). This is hardly a groundbreaking scenario. Courts have long recognized that "compliance with [the FDCA's] disclosure requirements concerning colors, flavors, and preservatives does not give a seller free rein to deceptively mischaracterize those ingredients on other parts of its label in contravention of state law." *Silva*, 2015 U.S. Dist. LEXIS 122186, at *5. "Because Congress has also allowed states, at the very least, to pass statutes identical to § 343(a), a private party equipped with a private right of action under state law is able to sue to enforce a state statute identical to §

---

[17] New York law likewise provides: "Food shall be deemed to be misbranded: . . . If its labeling is false or misleading in any particular." N.Y. Agric. & Mkts. Law § 201(1).

343(a), just as the FDA would be able to sue to enforce § 343(a) itself." *Zupnik v. Tropicana Prods.*, No. CV 09-6130, 2010 U.S. Dist. LEXIS 142060, at *6 (C.D. Cal. Feb. 1, 2010). Plaintiff Parks is suing to enforce a state statute identical in requirements to § 343(a), so there is no preemption. *See, e.g., Reynolds v. Wal-Mart Stores, Inc.*, No. 4:14cv381, 2015 U.S. Dist. LEXIS 53405, at *13 (N.D. Fla. Apr. 23, 2015) ("So in no sense does allowing a state-law claim premised on a violation of § 343(a)(1) unleash the mischief Congress sought to prevent with the [Nutrition Labeling and Education Act of 1990].") (internal citations omitted).

If a preemption analysis were necessary here (it is not), there are "three different types of preemption—'conflict,' 'express,' and 'field,'—but all of them work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Murphy v. Natl. Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018) (internal citation omitted). As set forth below, Plaintiff Parks's claims are not expressly preempted by any statute, are not within a field solely subject to federal regulation, and do not conflict with other federal laws.

### 1.   By the Very Terms of the Statute, Express Preemption Does Not Apply.

Rachael Ray Nutrish argues that "federal law expressly preempts any state law requiring that glyphosate be listed as an 'ingredient' on food labels." (Mem. 21.) Of course, Plaintiff Parks does not contend that glyphosate should be called an "ingredient," or that state law "requires" glyphosate to be disclosed—it is the affirmative use of the term "Natural" that is designed to make consumers believe the Products are free from synthetic biocide. Those claims are not expressly preempted. The Nutrition Labeling and Education Act of 1990 ("NLEA") amended the FDCA by, *inter alia*, adding express preemption provisions in 21 U.S.C. § 343-1(a) to address certain types

of state labeling requirements inconsistent with federal law. The express provision of the NLEA, however, does ***not*** preempt state law claims that impose requirements "identical to" federal food labeling requirements. 21 U.S.C. § 343-1(a); *see, e.g.*, *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192, 2010 U.S. Dist. LEXIS 141941, at *7 (N.D. Cal. Sept. 3, 2010) ("Based on the plain language of Section 343-1(a), the Court concludes that Zeisel's claims, to the extent they allege Diamond's labels are false and misleading, are not expressly preempted by the NLEA.").

Moreover, that amendment is the only form of express preemption under the NLEA, which "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343–1(a)] of the [FDCA]." Pub. L. No. 101–535, § 6(c)(1), 104 Stat. 2353, 2364. As such, if a claim does not fall within the scope of the express preemption provisions in 21 U.S.C. § 343-1(a), it is not preempted. *See Pom Wonderful v. Coca-Cola Co.*, 134 S. Ct. 2228, 2237 (2014) ("If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70-year history.") (quoting *Wyeth*, 555 U.S. at 574). A claim that a food label is false and misleading is consistent with federal law and thus can never be preempted under 21 U.S.C. § 343-1(a), a rule that has been applied specifically in the context of labels that use the term "natural." *See, e.g.*, *Astiana v. Hain Celestial Gp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015); *Silva*, 2015 U.S. Dist. LEXIS 122186, at *10.

## 2.  Congress Has Explicitly Stated That Field Preemption Does Not Apply.

Field preemption occurs when state law occupies a "field reserved for federal regulation," leaving no room for state regulation. *United States v. Locke*, 529 U.S. 89, 111 (2000). "[T]here is no indication that Congress intended the FDA to occupy the entire field of food labeling. As a result, the state law claims are preempted only if they seek to impose requirements that conflict

with federal requirements." *Ault v. J.M. Smucker Co*., No. 13 CIV. 3409, 2014 U.S. Dist. LEXIS 67118, at *3 (S.D.N.Y. May 15, 2014) (denying motion to dismiss "natural" label claims) (internal citation omitted); *see also, e.g.*, *Hillsborough Cty. v. Automated Med. Labs., Inc*., 471 U.S. 707, 716 (1985) (noting "presumption that state and local regulation of health and safety matters can constitutionally coexist with federal regulation"); *New York State Rest. Ass'n*, 556 F.3d at 123 (noting that field of food regulation is not preempted); *Silva*, 2015 U.S. Dist. LEXIS 122186, at **6-7 ("Both the Supreme Court and the Second Circuit have recognized this presumption in matters of public health and safety, including the regulation of food and drugs."). Indeed, Congress has explicitly stated that it does not intend to occupy the entire field of food regulation: The NLEA, itself, states that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343–1(a)] of the [FDCA]." Pub. L. No. 101–535, § 6(c)(1), 104 Stat. 2353, 2364.[18]

### 3.    Conflict Preemption Does Not Apply Because There Is No Conflict With Federal Law.

Conflict preemption occurs when it is "impossible for a private party to comply with both state and federal requirements." *English v. General Elec. Co*., 496 U.S. 72, 79 (1990). Plaintiff Parks's claims would not impose any requirement upon Rachael Ray Nutrish that federal law does

---

[18] *Gibson v. Quaker Oats Co*., No. 16 CV 4853, 2017 U.S. Dist. LEXIS 130696 (N.D. Ill. Aug. 14, 2017), the case upon which Rachael Ray Nutrish relies (Mem. 21-23), erroneously found that Congress did intend to preempt state regulation of the entire field of food labeling. The *Gibson* court came to this determination by misquoting 21 U.S.C. § 343-1 as stating "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce[.]" *Gibson*, 2017 U.S. Dist. LEXIS 130696, at *11 (brackets in the original). In actuality, 21 U.S.C. § 343-1 goes on to state (without a period) that only state requirements "not identical" to certain enumerated federal requirements are preempted. *See* 21 U.S.C. § 343-1. The *Gibson* court also opinion that field preemption was supported by 21 U.S.C. § 346a, which sets certain tolerances and exemptions for pesticide chemical residues. Plaintiff Parks's claims, however, do not pertain to, and do not conflict with, federal pesticide requirements.

not already impose, as Rachael Ray Nutrish is already prohibited from using food labels that are false or misleading. *See* 21 U.S.C. § 343(a)(1). Nor do the claims seek to bar any labeling that is permitted or required under federal law. Rachael Ray Nutrish attempts to confuse the issues by discussing compliance with ***other*** regulations, such as those setting maximum tolerances for pesticide residue. (Mem. 21-22.) As set forth above, Plaintiff Parks is not claiming that Rachael Ray Nutrish must affirmatively disclose the presence of glyphosate in the Products where no such federal requirement exists, or that the Products necessarily contain levels of glyphosate outside federal limits. Plaintiff Parks alleges that, when a food contains glyphosate, a label describing the food as "natural" violates the separate and distinct requirement that the label not be "false or misleading in any particular." The amount of glyphosate in the Products is not relevant to these claims, only the fact that glyphosate is synthetic and, therefore, not "Natural."

Compliance with other federal requirements does not excuse noncompliance with 21 U.S.C. § 343(a)(1) and state law, as courts have recognized in similar cases  regarding the labeling of products containing glyphosate. The court in *Tran v. Sioux Honey Association, Coop.*, *supra*, 2018 U.S. Dist. LEXIS 146380, for example, explained that compliance with residue statutes does not permit honey containing glyphosate residue to be labeled "pure":

> [Sioux Honey] explains that federal law does not require the disclosure of trace amounts of glyphosate in food products, that the FDA and EPA have considered the presence of trace amounts glyphosate in certain food products to be acceptable, and that the amounts of glyphosate allegedly found in Sioux Honey's honey is far below the thresholds approved for other food products. However, the crux of Tran's claims is Sioux Honey's use of the words 'Pure' and '100% Pure' on its product labels, not Sioux Honey's failure to disclose the presence of glyphosate in its honey. As noted above, Sioux Honey fails to identify any federal requirements that would be impossible to comply with should Tran prevail and Sioux Honey be required to remove the terms 'Pure' and '100% Pure' from its product labels.

*Id.*, 2018 U.S. Dist. LEXIS 146380, at *8-9; *see also Organic Consumers Ass'n. v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344 (D.D.C. 2018) ("This determination regarding unlawful trade practices

will not depend on whether Bigelow has complied with the tolerance levels for glyphosate in food products set by the EPA.") (internal citation omitted).

Plaintiff Parks seeks only that Rachael Ray Nutrish remove the word "Natural" from its marketing (if it chooses not to reformulate the Products to be free of unnatural substances). The claims do not conflict with, or undermine, the requirements of 21 U.S.C. § 346a (pertaining to tolerances for chemical pesticides), 40 C.F.R. § 180.364 (setting tolerance limits for glyphosate in foods), or any other federal requirement. There is no federal requirement that Rachael Ray Nutrish use the term "Natural" on its labels. *See Silva*, 2015 U.S. Dist. LEXIS 122186, at *11 ("[T]he FDA has not promulgated any formal rule governing when food products may or may not be labeled 'natural' that would have preemptive effect."); *Ault,* 2014 U.S. Dist. LEXIS 67118, at *11 ("Plaintiff seeks to prevent Defendant from using the slogan 'All Natural' to describe foods containing GMOs. Eliminating "All Natural" has no effect on Defendant's ingredient labeling and therefore cannot conflict with FDA labeling requirements."); *Parker v. J.M. Smucker Co*., No. C 13-0690 SC, 2013 U.S. Dist. LEXIS 120374, at *12-13 (N.D. Cal. Aug. 23, 2013) ("Defendant could have simply left 'All Natural' off the labels. But because they included the phrase, Plaintiff claims that the labels are misleading. This is not a preempted theory.").

Federal law sets tolerance levels for glyphosate residue in foods. Those tolerance levels are unrelated to whether a manufacturer—despite the fact that its products contain residue of this synthetic biocide—may nevertheless market the products as "Natural." There is no preemption.

**B.  There Is No Guidance Forthcoming, and No Reason to Defer to Any Agency Under the Doctrine of Primary Jurisdiction.**

The doctrine of primary jurisdiction allows a court to defer ruling on a matter when the technical expertise of an administrative authority is necessary. This is not such a case. "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question whether

the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. Western Pac. RR Co.*, 352 U.S. 59, 64 (1956). Rachael Ray Nutrish cites *In re Kind LLC "Healthy & All Natural" Litigation*, 287 F. Supp. 457 (S.D.N.Y. 2018), for five factors considered when deciding whether to defer:

(1)   whether the issue is within the conventional wisdom of the courts;

(2)   whether the issue is within the relevant administrative agency's discretion;

(3)   whether litigating the claims would cause a substantial danger of inconsistent rulings;

(4)   whether the parties have made a prior application to the relevant administrative agency; and

(5)   whether waiting for the relevant administrative agency to decide the matter would cause substantial delay.

(Mem. 24 (citing *id.* at 464-65).) As to the first two factors, this is not a claim that requires any technical knowledge about glyphosate; it is undisputed that glyphosate is not natural, and for purposes of this motion, it is taken as true that glyphosate is in the Products. The question in this litigation is one of product labeling and marketing, *i.e.*, whether Products known to contain residue of an admittedly unnatural biocide may be marketed as "Natural." Court after court, including in the context of glyphosate, have found such questions to be well within the conventional wisdom of the courts. *See, e.g., OCA v. General Mills, Inc.*, 2017 D.C. Super. LEXIS 4, *20 (holding that question whether granola bar that contained glyphosate, but was advertised '100% Natural Oats,' would tend to mislead consumers "strikes the Court as one that falls within the conventional experience of the court system"); *see also, e.g., Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531 (9th Cir. 2016) (reversing summary judgment for defendant in "all natural" case and upholding district court's refusal to stay case on primary jurisdiction grounds); *Walker v. B&G Foods, Inc.*, No. 15-cv-03772 2016 U.S. Dist. LEXIS 15194, at **15-16 (N.D. Cal. Feb. 8, 2016)

(applying primary jurisdiction doctrine only to questions of food safety, not to advertising); *National Consumers League v. Doctor's Associates*, No. 2013 CA 006549, 2014 D.C. Super. LEXIS 15, at **11-12 (Sept. 12, 2014) (quoting *Rikos v. P&G*, 782 F. Supp. 2d 522, 529-30 (S.D. Ohio 2011)). *Cf. Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) ("The issue that this case ultimately turns on is whether a reasonable consumer would be misled by [defendant's] marketing . . . ."); *United States v. Philip Morris USA, Inc.*, 686 F.3d 832, 838 (D.C. Cir. 2012) ("courts consistently have refused to invoke the primary jurisdiction doctrine for claims based upon fraud or deceit").

Nor are any of the other relevant factors present here. When a marketing or labeling claim turns on issues of state consumer-protection law, litigating the claims is unlikely to cause a substantial danger of inconsistent rulings. *See, e.g.*, *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) ("even if the FDA were to formally define 'natural,' federal law would not dispose of plaintiff's state law claims"); *Doctor's Assocs.*, 2014 D.C. Super. LEXIS 15, at *12 ("the FDA is unlikely to issue guidance which would resolve this dispute, and there is little concern about uniformity in administration across different jurisdictions"). Again, the question at issue here is whether a reasonable consumer would understand Rachael Ray Nutrish's marketing of the Products as "Natural" to mean that a biocide like glyphosate is not present in the Products. No ***future*** rule that the FDA may issue will retroactively make Rachael Ray Nutrish's marketing scheme any less deceptive today.

None of these parties has made a prior application to any administrative agency about this matter, and it is simply unsupportable to suggest that there would not be substantial delay to wait for FDA guidance (which in any event would not retroactively decide the claims). Rachael Ray Nutrish argues that "the delay in this case will likely be minimal in light of the FDA's recent

35

comments." (Mem. 25.) For this extraordinary claim, Rachael Ray Nutrish cites a *New York Times* article, which purports to quote FDA commissioner Dr. Scott Gottlieb that the FDA may provide guidance some (unspecified) time "soon" on what can be called natural.[19] Rachael Ray Nutrish's suggestion of a "minimal" delay is extraordinary given that (1) more than three years have elapsed since the FDA accepted public comments on defining "natural," *see supra,* Section I.B.2, with no action taken; (2) newspapers have already been quoting Dr. Gottlieb for ***more than a year*** stating that action may come "soon,"[20] again with no action taken; (3) the current administration has stated a policy ***against*** new federal regulations, even going so far as to declare that two such regulations must be eliminated for every one created, "Reducing Regulation and Controlling Regulatory Costs," Exec. Order No. 13771, 82 Fed. Reg. 9339 (Jan. 30, 2017) (directing federal agencies to identify "at least two existing regulations to be repealed" for every new regulation they seek to implement); and (4) even assuming FDA chooses to promulgate a rule defining "natural," the process likely will take years to complete.[21] What Rachael Ray Nutrish actually is seeking is a

---

[19] Rachael Ray Nutrish has not sought judicial notice of this *New York Times* article, which it could not do because a newspaper article is not admissible evidence for the truth of its contents. *See, e.g.*, *Ayala v. Looks Great Servs.*, No. 14-cv-6035, 2016 U.S. Dist. LEXIS 81912, at *22 (E.D.N.Y. June 23, 2018) ("[I]t is not proper for the Court to take judicial notice of these newspaper articles because the Plaintiffs seek to offer them for the truth of their contents[.]"); *Outerbridge v. City of New York*, No. 13-cv-5459 (AT), 2015 U.S. Dist. LEXIS 136379, at **10-11 (S.D.N.Y. Sept. 30, 2015) ("It is well-established that 'newspaper articles offered for the truth of the matters asserted therein are inadmissible hearsay[.]") (quoting *Odom v. Matteo*, 772 F. Supp. 2d 377, 404 (D. Conn. 2011).

[20] *See, e.g.*, Heather Haddon, *FDA Commissioner Wants Closer Look at Health Claims on Packaging*, Wall Street Journal (Oct. 10, 2017), https://www.wsj.com/articles/fda-commissioner-wants-closer-look-at-health-claims-on-packaging-1507673335.

[21] The government's "Reg Map" suggests that even if FDA were to undertake a decision on the term "natural," the rulemaking process consists of some nine steps. U.S. Office of Information and Regulatory Affairs, *Reg Map*, https://reginfo.gov/public/reginfo/Regmap/index.jsp (last visited Sept. 24, 2018). Soliciting input from external groups, as FDA did three years ago, is only part of the first of these steps. There is no official indication that next step has been completed or even begun. By way of example, the FDA first published draft guidance regarding evaporated cane juice in October 2009, but did not

"stay" of indefinite duration, during which it will continue to mislead consumers by labeling the Products "Natural" despite the presence of glyphosate.[22] Fortunately, the doctrine of primary jurisdiction requires no such draconian action.

## CONCLUSION

For all the foregoing reasons, Plaintiff Markeith Parks respectfully requests that Defendant Rachael Ray Nutrish's Motion to Dismiss be denied. In the event the Court is inclined to grant any portion of the Motion, Plaintiff Parks requests the opportunity to amend the Complaint.

November 30, 2018                                  Respectfully submitted,

                                                  **RICHMAN LAW GROUP**

                                                  _____
                                                  Kim E. Richman
                                                  81 Prospect Street
                                                  Brooklyn, New York 11201
                                                  T: (718) 405-4579
                                                  F: (718) 228-8522
                                                  krichman@richmanlawgroup.com

---

publish its final guidance until May 2016—more than six-and-a-half years later. *See* FDA, *Ingredients Declared as Evaporated Cane Juice: Guidance for Industry* (May 2016), http://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM502679.pdf.

[22] Oddly, Rachael Ray Nutrish attempts to argue in favor of a stay using the case *Scholder v. Riviana Foods Inc.*, No. 16-cv-6002, 2017 U.S. Dist. LEXIS 98330 (E.D.N.Y. June 23, 2017) (Mem. 24-25), and authorities cited therein. Of the authorities cited in the *Scholder* decision, *see* 2017 U.S. Dist. LEXIS 98330, at **4-5, several set only limited stays, which by now have long since expired, *see, e.g.*, *In re KIND*, 287 F. Supp. 3d at 466 (allowing stay only until August 15, 2018, and then permitting plaintiffs to file to lift stay); *In re Hain Celestial Seasonings Prods. Consumer Litig.*, No. SACV 13-1757, 2016 U.S. Dist. LEXIS 153565, at *3 (C.D. Cal. Aug. 8, 2016) (staying case for 90 days); *In re General Mills, Inc.*, No. 12-249, 2016 U.S. Dist. LEXIS 76723, at *3 (D.N.J. June 13, 2016) (issuing stay to expire October 11, 2016), and any cases that did not limit the stays now have presumably languished without any action for *years* while the FDA issues no guidance. This authority hardly supports Rachael Ray Nutrish's contention that a stay would cause "no significant delay."